The Honorable Tana Lin

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation, as subrogee of DH&G, LLC., <br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendants. | No. 2:19-cv-00138-TL<br><br>DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF MICHAEL ESKRA<br><br>NOTE ON MOTION CALENDAR: JUNE 16, 2023 |

## INTRODUCTION

This subrogation case arises out of fire that occurred on December 31, 2015, at an apartment complex known as the Bluffs at Evergreen, in Everett, WA. The subject fire occurred in a bedroom occupied by a resident named Mark Davis. Davis died in the fire. His roommate, Lynn Yevrovich, witnessed the fire in its early stages. During her interview with police investigators, Yevrovich stated repeatedly that Davis had set the fire. There were no other witnesses to the incident.

In the face of this evidence, and although Yevrovich never mentioned Davis' computer during her police interview, the plaintiff sued Hewlett-Packard Company ("HP"), alleging that the fire was caused by a lithium-ion battery in Davis' computer. To support this theory, plaintiff

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 1

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

retained Michael Eskra, who opines that the fire started in a battery cell in the computer. However, his methodology in arriving at this opinion failed to comply with Fed.R.Evid. 702 and must be excluded from trial in accordance with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

HP further incorporates herein the Factual Background from its accompanying Motion for Summary Judgment.

## ARGUMENT

### I. Expert testimony must be the product of reliable principles and methodology and based on sufficient facts or data

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)   the testimony is the product of reliable principles and methods; and
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert*, the Supreme Court established four factors for the courts to use in determining reliability of evidence under Rule 702: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Id.* at 592-94.

In accordance with *Daubert* and Rule 702, the courts must "perform a gatekeeping function to ensure that the expert's proffered testimony is both reliable and relevant." *United*

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 2

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

*States v. Christian*, 749 F.3d 806, 810 (9th Cir. 2014), quoting *United States v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010). "In making this determination, the judge must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and … whether that reasoning or methodology properly can be applied to the facts in issue.'" *Newkirk v. Conagra Foods, Inc.,* 727 F. Supp. 2d 1006, 1014 (E.D. Wash. 2010), quoting *Daubert,* 509 U.S. at 592-93. "The objective of [*Daubert*'s gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 W. Ct. 1167, 1176 (1999).

To be admissible, an expert's opinion must be based on proper methods and procedures, not "subjective belief or unsupported speculation." *Daubert* , 509 U.S. at 590; *see also Koho v. Forest Labs, Inc.*, 2015 U.S. Dist. LEXIS 180860 (W.D. Wash. Mar. 31, 2015). An expert's testimony is properly excluded under *Daubert* when it speculative. *See Gold Creek Condo.- Phase I Ass'n of Apartments Owners v. State Farm Fire & Cas. Co.*, No. 20-5690, 2022 U.S. Dist. LEXIS 116944, 2022 WL 2398424 (W.D. Wash. July 1, 2022) (opinion excluded as speculative where expert relied on a theoretical analysis); *Rydman v. Champion Petfoods USA, Inc.*, 2023 U.S. Dist. LEXIS 75439 (W.D. Wash. May 1, 2023) (conclusory opinion excluded under *Daubert*).

Numerous courts have recognized the National Fire Protection Association's Guide for Fire and Explosion Investigations, or NFPA 921, as the industry standard for fire investigations. This Court has held that NFPA 921 is one of a few acceptable guides for fire investigation methodology. *In re Complaint of Shears*, 2016 U.S. Dist. LEXIS 258, *6 (W.D. Wash. Jan. 4, 2016), citing *Schlesinger v. U.S.*, 898 F. Supp. 2d 489, 504 (E.D.N.Y. 2012) and *Russ v. Safeco*

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 3

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

*Ins., Co.*, No. 2:11cv195-KS-MTP, 2013 U.S. Dist. LEXIS 42333, 2013 WL 1310501, *24 (S.D. Miss. Mar. 26, 2013). Consistent with *Daubert* and Rule 702, NFPA 921 requires fire investigators to follow the scientific method, which involves: (1) recognizing a need exists to determine what caused the fire; (2) defining the problem; (3) collecting data; (4) analyzing the data; (5) developing a hypothesis based on the data; and (6) testing the hypothesis. *Idaho Cty. Light & Power Coop. Ass'n,* 2020 U.S. Dist. LEXIS 22030, at *19-20 (D. Idaho Feb. 7, 2020), citing NFPA 921, §§ 4.2, 4.3.

## II.   Eskra's opinions are not based on reliable testing or methodology

As discussed in more detail below, plaintiff has proffered the unreliable and unsupported opinions of Michael Eskra in which he alleges that a manufacturing defect in a battery cell *might have* caused the fire. *Report of Michael Eskra* (*Exh. 1 to Declaration of Christopher G. Betke in Support of Eskra Motion*) at 32. Despite claiming that he conducted his investigation in accordance with NFPA 921 and the scientific method (*id.* at 2), Eskra's opinions are speculative and devoid of scientific methodology. Eskra contends that a manufacturing defect might have caused the fire; however, he offers no explanation as to how a manufacturing defect would have occurred in a highly automated manufacturing process.[1] Eskra purported to conduct his own testing of an HP notebook as well as the battery pack and cells at issue. However, his methodologies and opinions are so unscientific and unreliable that they cannot form the basis of plaintiff's case against HP and must be stricken by the Court. Indeed, Eskra did nothing to ensure that he was testing relevant items:

a. **Eskra's Testing of an "Exemplar" That Is Not an Exemplar**

---

[1] As Dr. Horn notes, "If defects were introduced during the manufacturing process of the battery packs or lithium-ion cells, it would be anticipated that other failures of these battery packs would have been reported and that a recall of the cells would have occurred...It is unlikely that one single cell leaving the production line would be defective in a way that might cause it to initiate a thermal event…" *Exh. 1 to Affidavit of Quinn Horn* at 8-9.

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 4

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

As Eskra acknowledges, the Davis notebook was a model 15-AC132DS. *Deposition of Michael Eskra* (*Exh. 2*) at 5:19-21. Eskra purported to conduct testing of this model computer as well as the battery pack/cells at issue. Testing of an appliance is, indeed, a generally accepted methodology. See NFPA 921, § 25.4.5 ("To understand an appliance more fully, to test its operation, or to explore failure mechanisms, the investigator may need to obtain an exact duplicate (i.e., Exemplar)…The investigator will need to determine whether the exemplar located is similar enough to the artifact to be useful."). However, Eskra did nothing to ensure that he had "an exact duplicate" of the Davis notebook. He played no role in obtaining the exemplars; they were just sent to him by Jensen Hughes. *Exh. 2* at 19:1-7. Eskra does not know if the "exemplars" were new or used. *Id.* at 82:17-21. Worse yet, Eskra does not know if they were "refurbished." *Id.* at 82:22-23. Thus, Eskra does not know whether the exemplars he used were the same or altered and, therefore, may not be anything like the Davis notebook.

Eskra devotes a significant amount of time in his report to his alleged testing of "exemplar" battery packs and cells. However, this testing is meaningless because Eskra tested battery packs and cells that <u>were not</u> present in the Davis notebook.[2]  Eskra admits that his testing was done on the wrong type of battery cell:

> Q: And then with respect to the cells, you believe that the exemplars were LG Chem, and you understand that the Davis notebook shipped with SDI cells, correct?
>
> A: Yes.

*Id.* at 23:19-23. This error is of utmost importance because Eskra is claiming a "manufacturing defect." Therefore, examining battery packs and cells manufactured by different companies, at

---

[2] As stated in the Affidavit of Dr. Horn at ¶13, while Eskra suggests that the exemplar battery packs he used may have been Simplo packs with the wrong cells (LG Chem and not Samsung SDI), Eskra's own photographs show that the exemplar packs were Chongqing C-Tech Co., Ltd. Packs.

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 5

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

different times, by different machines and different workers is entirely irrelevant to this case, warranting exclusion of Eskra's testimony. *See Romero v. S. Schwab Co.,* No. 15-CV-815-GPC-MDD, 2017 U.S. Dist. LEXIS 189959, at *18 (S.D. Cal. Nov. 16, 2017) (precluding expert testimony that exemplar shirts were almost identical to the shirt involved in fire where the exemplars were manufactured by a different company.). Testing a different battery pack and cell than those at issue in this case is <u>not</u> a generally accepted methodology in battery science and cannot yield useful scientific information where one is attempting to ascertain whether a specific type of battery pack/cell caused a fire. *Affidavit of Quinn Horn* (*Exh. 3*) at ¶12. This is even more so when one hypothesizes a manufacturing defect. *Id.* Indeed, Eskra admits the import of the manufacturing process in determining the presence of a defect that causes a fire:

> Q: So I guess your point, if I'm understanding it… Is if – the more precise the manufacturing, the less likely there is a problem; the less precise the manufacturing, the more likely there's a problem. Is that fair?
> A: Correct.

*Exh. 2.* at 44:15-21; *see also id.* at 45:2-6.

Thus, by Eskra's own admission, testing battery packs and cells manufactured by different companies is irrelevant since the issue is "manufacturing processes dependent." Regardless, as stated by Dr. Horn, testing the wrong products is not a generally accepted methodology in the field of battery science.

    c.    **Eskra's Testing of the Faux Exemplar on a Used Dog Bed**

As stated above, Eskra has no knowledge of whether the "exemplar" shipped to him was original or refurbished. Further, Eskra knew the faux exemplars had entirely different component parts critical to his theory that a battery cell went into thermal runaway and caused this fire. *Id.* at 23:19-23. These failings are sufficient to warrant striking Eskra's opinions. The actual tests he performed were also wildly flawed.

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 6

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

1    For example, Eskra tested the faux exemplar on a used dog bed to "restrict airflow" to see what type of temperatures it would generate. *Id.* at 59:2-6. Testing an exemplar on a dog bed is inconsistent with generally accepted scientific principles. One problem with this sort of testing is the potential for contamination due to the presence of dog hair. Eskra conceded as much:

> Q:   Could dog hair from the dog bed have contaminated the heat sink?
>
> A:   Oh, you don't know Jayda[3]. Jayda is a princess. Okay? She was a show dog. She's the type of dog that won't let you pet her if you haven't washed your hands. It's a crazy-she was a crazy animal. But very loving I guess. But it was very rare you'd get dog hair on you from having Jayda next to you. I'll just put it that way. **Is it possible? Maybe.** But that dog was **pretty clean**.

*Exh. 2* at 60:16-25. In fact, Eskra also conceded that he was <u>not</u> trying to recreate the conditions allegedly present on day of the fire that is the subject of this case:

> Q:   So – but – well, you weren't attempting to try to recreate Mr. Davis's bed, were you?
>
> A:   No.

*Exh. 2* at 59:2-4. In contrast, the Model NB passed the UL/CB standardized tests that actually test the effect of blocking vents on *this type of HP* notebook computer using the battery pack and cells from the Davis notebook and ensures that it will not get too hot and cause a fire. *Report of Quinn Horn* (attached as Exhibit 1 to his affidavit) at 12-14.

In sum, Eskra failed to use a true exemplar, he experimented on a possibly contaminated used dog bed, and he admits he was not trying to duplicate conditions of the actual fire in this

---

[3] Jayda was a "whippet." *Exh. 2* at 58:7. The American Kennel Club states: "With their short coat, the Whippet is a somewhat frequent shedder that could definitely use a regular weekly brushing. Be careful of wearing dress slacks or suit jackets while petting these friendly companions — you'll need a lint brush!" https://www.akc.org/expert-advice/lifestyle/10-things-only-a-whippet-owner-would-understand/#:~:text=Whippets%20have%20a%20short%2C%20smooth%20coat%20that%20needs%20an%20occasional%20bath.&text=With%20their%20short%20coat%2C%20the,ll%20need%20a%20lint%20brush!

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 7

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

case. Yet, it is this "experiment" on which Eskra formulates his opinion that the Davis notebook caused the fire:

> Q: So is it your testimony, … the additional heat plus … this … twisted tab in concert that caused it [battery cell] to go into thermal runaway?
> A: Yes.

*Exh. 2* at 96:18-21. Because Eskra's test process is flawed from a scientific point of view (unknown computer, wrong battery cells, used dog bed, and admission that it did not recreate conditions of Davis' bed), it cannot provide the basis for an opinion that the additional heat in concert with a mechanical defect caused the cell to go into thermal runaway. *Exh. 3* at ¶¶ 16-19.

### III. Eskra opines that a "mechanical defect" may have caused the fire but the defects he references did not exist.

Eskra states that "some mechanical defect such as a burr or twisted tabbing and the cell was driven to a low voltage due to an auto shutdown and restart. This would cause additional stress internal to the cell, weakening the separators [sic] ability to prevent a shorting event." *Exh. 1* at 32. However, Eskra conceded at his deposition that there was not a burr:

> Q: So is it your hypothesis in this case that there was a mechanical defect that was either a burr or a twisted tabbing that caused the battery to go into thermal runaway?
> A: I don't believe it was a burr…

*Exh. 2* at 81:10-14.

> Q: I understand that as you sit here today you're sort of ruling out the burr possibility; am I right about that?
> A: Correct…

*Id.* at 83:17-22.

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 8

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

Thus, Eskra is left with a twisted tab as the alleged mechanical defect. *Id.* at 84:6-8. However, in his report, Eskra stated that the tab connection was not the source of the alleged problem: "It is **not** apparent that the foil-to-tab connection caused the short such as would be expected with a manufacturing defect." *Exh. 1* at 11 (emphasis added). Thus, Eskra ruled out both of the alleged mechanical defects he hypothesizes may have caused the fire: the burr or twisted tab connection. Admittedly, changed his position at his deposition and pointed to a twisted tab connection as the cause of the fire. *Exh. 2* at 84:6-8. Nevertheless, the fact that Eskra contradicts his report in his deposition is indicative of the lack of reliability of his opinion. Eskra should be precluded from offering testimony inconsistent with his report. *See Hambrook v. Smith,* No. 14-00132 ACK-KJM, 2016 U.S. Dist. LEXIS 100477, at *8-9 (D. Haw. Aug. 1, 2016), *quoting Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony.")

Eskra admits he does not know how the tab became twisted. *Exh. 2* at 96:22-23. This is significant because Eskra did not examine the battery cells until December 2020.[4] *Exh. 2*. at 87:13-16. This was three-plus years after the battery cells were *destructively* disassembled at a joint August 2017 evidence exam. *Exh. 3* at ¶¶5-7. HP's expert, Dr. Horn, was present at this examination and, as stated in his affidavit, the tab of Eskra's battery cell #2 was not twisted prior to the destructive disassembly. *Id.* at ¶6. Thus, the alleged manufacturing defect that forms the basis of Eskra's opinion that cell #2 caused the fire in this case ("twisted tab") was not, in fact, a manufacturing defect because the tab was not twisted prior to being destructively manipulated

---

[4] Eskra's December 2020 examination was done without notice to HP. It took place Eskra's lab with only his assistant present. *Exh. 2* at 85:18-21; 87:13-21. This is in contrast to the earlier evidence exams that were done jointly and pursuant to protocols agreed upon by both parties.

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 9

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

at the August 2017 exam or sometime thereafter. *Id.* at ¶7. In fact, Eskra acknowledged that the so-called twisted tab had been manipulated. *Exh. 2* at 86: 1-4.

Because Eskra's opinion is premised on the notion that the so-called "twisted tab" was the result of a manufacturing defect as opposed to the result of being destructively disassembled, and because Dr. Horn has indicated that no twisted tab existed on the cell prior to the destructive disassembly, Eskra's opinion is based on inaccurate data and must be excluded from evidence in accordance with Fed. R. Evid. 702.

### IV. Eskra admits that he is not an expert on battery management systems but offers an opinion on them anyway

Eskra devotes much of his report (*Exh. 1* at 27-32) and his deposition to an alleged analysis of the System Management Bus (SMBus) of the faux exemplar notebook. According to Eskra, he did this "[t]o get a better understanding of how the battery and computer operate together." *Id.* at 27. HP anticipates that Eskra may attempt to offer an opinion that "the fact that the SMBus and the battery management system isn't utilized I think may have contributed [to the cell 2 causing the fire] but to a secondary level." *Exh. 2* at 97:5-7. This testimony must be excluded. First, Eskra admitted: "I'm not an SMBus expert." *Id.* at 49:4. Thus, his proposed opinions related thereto must be stricken in accordance with Fed.R.Evid. 702 (expert who has "knowledge, skill, experience, training, or education may testify in the form of an opinion…").

In addition, as discussed above, Eskra conducted his analysis on faux exemplars of the notebook and battery pack/cells. Furthermore, Eskra conceded that he did not access the BMU chip in the relevant Davis notebook because it was locked. *Id.* at 99:15-19. In other words, while admitted non-expert Eskra allegedly tested irrelevant computers and battery packs/cells; he admits that he did not access the relevant data in the computer. *Id.* at 99:20-25. Accordingly, he

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 10

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

does not know whether the *actual* SMBus and battery management system played a "secondary" role in cell 2 allegedly causing a fire:

> Q. All right. So when you say it's secondary, you're saying its possible it could have played a role, but you don't know as you sit here today?
>
> A. That's correct.

*Id.* at 100:1-4.

### V. Contrary to scientific principles, Eskra equates fire damage to fire cause

Stripped of the results of irrelevant testing and discussion of a SMBus, all that is left of Eskra's opinion is his belief that it looks to him like Cell 2 caused the fire. This is, of course, disputed by Dr. Horn, who does not see any differential damage between Cells 1 and 2. *Exh. 1 to Affidavit of Quinn Horn* at 11. More importantly, Eskra conceded at his deposition that there is no generally accepted peer reviewed publications that stands for the proposition that one can look at the damage to lithium-ion battery cells post-fire and determine whether they caused a fire. *Exh. 2* at 51:24-52:4. He conceded this point with respect to basically every physical characteristic that he points to in support of his opinion. Thus, Eskra concedes there is no generally accepted peer reviewed literature that supports any of the following:

- That overpressurization that results in deformation of the crimp indicates a cell cause the fire. *Id.* at 52:5-9.

- That expulsion of cell contents demonstrates that the cell caused the fire. *Id.* at 52:10-12.

- That localized electrode windings damage will tell you that a cell caused the fire. *Id.* at 53:6-9.

- That a perforation or a hole in the metal can tell you that a cell caused a fire. *Id.* at 53:10-14.

In the absence of generally accepted peer reviewed literature that supports his opinions, Eskra's opinion is nothing more than *ipse dixit* which cannot form the basis for admissible expert opinion. *Doming ex rel. Domingo v. T.K.,* 289 F.3d 600, 607 (9th Cir. 2002), quoting *General*

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 11

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

*Elec. Co. v. Joiner,* 522 U.S. 136, (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Cano v. Cont'l Airlines, Inc.,* 193 F. App'x 664, 666 (9th Cir. 2006); *Bell v. Boeing Co.,* No. 20-CV-01716-LK, 2022 U.S. Dist. LEXIS 73964, at *24 (W.D. Wash. Apr. 22, 2022). In fact, this exact same differential damage argument related to battery cells causing a fire has already been rejected: "[L]ithium-ion battery cells respond randomly to heat, and that differential damage cannot be used to determine that a particular cell was the cause of the fire." *Gopalratnam v. Hewlett-Packard Co.*, Civil Action No. 13-cv-618-pp, 2017 U.S. Dist. LEXIS 40386, at *31 (E.D. Wis. Mar. 21, 2017). In fact, "the cells that initiate a fire are 'comparatively lightly damaged' as compared to the cells that later are attacked by the fire." Id. at *32.

**VI.   Eskra's conclusions are, by his own admission, speculative**

Given Eskra's lack of expertise, his failure to follow NFPA 921, and his experimentation on irrelevant exemplars, it is not surprising that Eskra's opinions are mere speculation. On page 11 of his report, Eskra states: "At the time of the incident the laptop was on a mattress and bedding material.[5] The **likelihood** is that the computer **could** experience elevated temperatures." *Exh. 1* (emphasis added). In his conclusion, Eskra speculates that a battery cell in the Davis notebook "developed an internal short" and caused the fire. *Id.* at 32. He goes on to state:

> The CT scan also shows that **it is possible** that the Samsung cell developed a short near the area of where the anode current collector is connected to the anode tabbing. The testing of the computer and battery pack shows that in general the operation is within generally acceptable guidelines. The testing does show that when the computer is run to auto-shut down and allowed to relax that the subsequent restart and rundown drives the voltage to a level where cell damage

---

[5] This has not been established.

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 12

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

occurs that is well known to cause internal cell failures. These two **possible** failure modes **might have** worked together to initiate the failure of the cell. **This would happen if a cell had some mechanical defect** such as a burr or twisted tabbing and the cell was driven to a low voltage due to an auto shutdown and restart. This would cause additional stress internal to the cell, weakening the separators ability to prevent a shorting event.

*Id.* (emphasis added). At most, Eskra is able to offer an opinion on what was "possible" or what "might have" happened *if* there had been "some mechanical defect such as a burr or twisted tabbing" in a battery cell. Yet, as noted above, Eskra conceded that he did not believe there was a burr (*Exh. 2* at 81:14; 83:17-22), and he rejected the twisted tab theory. *Exh. 1* at 11. Thus, Eskra's opinion is speculation that fails the reliability standards of Rule 702 and *Daubert*.

## CONCLUSION

For the reasons set forth above, Michael Eskra's opinions must be excluded from trial.

I, Kenneth M. Roessler, certify that the above memorandum contains 3,958 words (exclusive of the caption, signature block, and certificate of service), in compliance with the Local Civil Rules.

*/s/ Kenneth M. Roessler*
Kenneth M. Roessler, WSBA 31886

Respectfully submitted,

Defendant, HP, Inc.,
By its attorneys,

*/s/ Kenneth M. Roessler*

Kenneth Roessler, WSBA 31886
Mix Sanders Thompson
1420 Fifth Ave., Suite 2200
Seattle, WA 98101

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 13

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

(206) 521-5989
ken@mixsanders.com

*/s/ Christopher G. Betke*
Christopher G. Betke, pro hac vice
Coughlin Betke LLP
175 Federal St.
Boston, MA 02110
(617) 988-8050
cbetke@coughlinbetke.com

**CERTIFICATE OF SERVICE**

I certify that on the date below I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

John R. MacMillan: jmacmillan@msmlegal.com
Kenneth Roessler: ken@mixsanders.com

DATED: May 30, 2023         */s/ Christopher G. Betke*

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 14

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

# CERTIFICATE OF SERVICE

I, Kelly Lee, certify that on May 30, 2023, I electronically filed the foregoing Defendant HP's Motion to Exclude the Testimony & Opinions of Michael Eskra; Declaration of Christopher G. Betke (with Exhibits), with the Clerk of the Court using the CM/ECF System and caused to be served a true and correct copy via the method indicated below and addressed to the following:

| ***Attorney for Plaintiff Philadelphia Indemnity Insurance Company*** | ***Attorney for Defendant Hewlett-Packard Company*** |
|---|---|
| John R. MacMillan | Christopher G. Betke |
| MacMillan Scholz & Marks | Coughlin & Betke |
| 900 SW 5th Ave Suite 1800 | 175 Federal St Ste 1450 |
| Portland OR 97206 | Boston MA 02110 |
| jmacmillan@msmlegal.com | cbetke@coughlinbetke.com |
| ☒CM/ECF System | ☒CM/ECF System |

s/Kelly Lee
Mix Sanders Thompson, PLLC
1420 Fifth Avenue, 22nd Floor
Seattle, WA  98101
Tel:     206-521-5989
Fax:    888-521-5980

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF MICHAEL ESKRA
Case No. 2:19-cv-00138-TL– 15

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980