The Honorable Tana Lin

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation, as subrogee of DH&G, LLC., <br><br> Plaintiffs, <br><br> v. <br><br> HEWLETT-PACKARD COMPANY, <br><br> Defendants. | No. 2:19-cv-00138-TL <br><br> DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF KEN RICE <br><br> **NOTE ON MOTION CALENDAR: JUNE 16, 2023** |

**INTRODUCTION**

This subrogation case arises out of a fire that occurred on December 31, 2015, at an apartment complex known as the Bluffs at Evergreen, in Everett, WA. The subject fire occurred in a bedroom occupied by a resident named Mark Davis. Mr. Davis died in the fire. His roommate, Lynn Yevrovich, witnessed the fire in its early stages. During her interview with police investigators, Yevrovich stated repeatedly and unequivocally that Davis had set the fire. There were no other witnesses to the incident.

In the face of this evidence, and although Yevrovich never mentioned Davis' computer during her police interview, the plaintiff sued Hewlett-Packard Company ("HP"), alleging that the fire was caused by a lithium-ion battery in Davis' computer. Plaintiff hired an origin and

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-521-5989
Fax: 888-521-5980

cause expert, Ken Rice, to advance this theory. Rice relies on speculation, and his opinions fail

to meet the scientific standards applicable to fire investigations. His opinions thus fail to comply

with the requirements of Fed.R.Evid. 702, and must be excluded from trial in accordance with

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

HP further incorporates herein the Factual Background from its accompanying Motion for

Summary Judgment.

## ARGUMENT

### I.   Expert testimony must be the product of reliable principles and methodology and based on sufficient facts or data

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert*, the Supreme Court established four factors for the courts

to use in determining reliability of evidence under Rule 702: (1) whether a theory or technique

can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or

potential error rate of the theory or technique; and (4) whether the theory or technique enjoys

general acceptance within the relevant scientific community. *Id.* at 592-94.

In accordance with *Daubert* and Evidence Rule 702, the courts are required to "perform a

gatekeeping function to ensure that the expert's proffered testimony is both reliable and

relevant." *United States v. Christian*, 749 F.3d 806, 810 (9th Cir. 2014), quoting *United States*

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF KEN RICE
Case No. 2:19-cv-00138-TL – Page 2

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

*v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010). "In making this determination, the judge must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and … whether that reasoning or methodology properly can be applied to the facts in issue.'" *Newkirk v. Conagra Foods, Inc.,* 727 F. Supp. 2d 1006, 1014 (E.D. Wash. 2010), quoting *Daubert,* 509 U.S. at 592-93. "The objective of [*Daubert*'s gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 W. Ct. 1167, 1176 (1999).

## II.     Ken Rice's opinion that the fire was caused by a failure in the computer's battery pack is inadmissible because Rice admits it is speculative.

To be admissible, an expert's opinion must be based on proper methods and procedures, not "subjective belief or unsupported speculation." *Daubert* , 509 U.S. at 590; *see also Koho v. Forest Labs, Inc.*, 2015 U.S. Dist. LEXIS 180860 (W.D. Wash. Mar. 31, 2015). An expert's testimony is properly excluded under *Daubert* when it speculative. *See Gold Creek Condo.- Phase I Ass'n of Apartments Owners v. State Farm Fire & Cas. Co.*, No. 20-5690, 2022 U.S. Dist. LEXIS 116944, 2022 WL 2398424 (W.D. Wash. July 1, 2022) (excluding architect's opinion that wind-driven rain damaged the buildings' exterior as speculative where he relied on a theoretical analysis); *Rydman v. Champion Petfoods USA, Inc.*, 2023 U.S. Dist. LEXIS 75439 (W.D. Wash. May 1, 2023) (conclusory opinion excluded under *Daubert)*.

Here, Rice contends that the fire originated on Davis' bed and was caused by an "internal failure of the HP laptop l-ion battery pack that ignited surrounding combustible materials." *Report of Ken Rice* (*Exh. 1 to Declaration of Christopher G. Betke in Support of Motion to*

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF KEN RICE
Case No. 2:19-cv-00138-TL – Page 3

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

1   *Exclude Rice*) at 30. At his deposition, however, he testified that he was <u>not</u> purporting to offer

2   any scientific opinions about the battery pack and battery cells. *Deposition of Ken Rice* (*Exh. 2*)

3   at 13:9-12. Rice's opinion is, by his own admission, not based on science. It is, instead,

4   speculative, and must be excluded from trial. *See Daubert* , 509 U.S. at 590; *Dickson*, 2021 U.S.

5   Dist. LEXIS 177981; *Gold Creek Condo.-Phase I Ass'n of Apartments Owners;* 2022 U.S. Dist.

6   LEXIS 116944.

7            **III.    Rice's opinions must be stricken because he failed to follow NFPA 921**
                       **despite claiming to have done so.**

8

9            Numerous courts in this circuit and across the country have recognized the National Fire

10   Protection Association's Guide for Fire and Explosion Investigations, or NFPA 921, as the

11   industry standard for conducting fire investigations.[1] This Court has held that NFPA 921 is one

12   of a few acceptable guides for fire investigation methodology.  *In re Complaint of Shears*, 2016

13   U.S. Dist. LEXIS 258, *6 (W.D. Wash. Jan. 4, 2016), citing *Schlesinger v. U.S.*, 898 F. Supp.

14   2d 489, 504 (E.D.N.Y. 2012) and *Russ v. Safeco Ins., Co.*, No. 2:11cv195-KS-MTP, 2013 U.S.

15   Dist. LEXIS 42333, 2013 WL 1310501, *24 (S.D. Miss. Mar. 26, 2013).

16

17

18   ――――――――――――――
     [1] *Philadelphia Indem. Ins. Co.* v. *BMW of N. Am., LLC*, No. CV-13-01228-PHX-JZB, 2015 U.S. Dist. LEXIS
     131218, at *18 (D. Ariz. Sep. 29, 2015); *Allstate Ins. Co.* v. *Ford Motor Co.*, No. CV-08-2276-PHX-NVW,
19   2010 U.S. Dist. LEXIS 48485, at *13 (D. Ariz. Apr. 20, 2010); *Glassman* v. *Home Depot USA, Inc.*, No. 2:16-
     cv-07475-ODW-E, 2018 U.S. Dist. LEXIS 122842, at *10-11 (C.D. Cal. July 20, 2018); *American Nat'l Prop.*
20   *& Cas. Co.* v. *Electrolux Home Prods.*, No. 11-CV-1340 JLS (NLS), 2013 U.S. Dist. LEXIS 205865, at *16
     (S.D. Cal. May 1, 2013); *United States* v. *Idaho County Light & Power Coop. Ass'n*, No. 3:17-cv-00391-
     CWD, 2020 U.S. Dist. LEXIS 22030, at *18-19 (D. Idaho Feb. 7, 2020); *Occidental Fire & Cas. of*
21   *N.C.* v. *Intermatic Inc.*, No. 2:09-CV-2207 JCM (VCF), 2013 U.S. Dist. LEXIS 116303, at *4-5 (D. Nev. Aug.
     15, 2013); *Werth* v. *Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1060 (D. Minn. 2012); *Travelers Indem. Co. v.*
22   *Indus. Paper & Packaging Corp.*, No. 3:02-CV-491, 2006 WL 1788967, at *4-5 (E.D. Tenn. June 27, 2006);
     *Russ v. Safeco Ins. Co.*, No. 2:11cv195-KS-MTP, 2013 U.S. Dist. LEXIS 42333, 2013 WL 1310501, at *24
     (S.D. Miss. Mar. 26, 2013); *Schlesinger v. United States,* 898 F.Supp.2d 489, 504 (E.D.N.Y. 2012); *Bryte ex*
23   *rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 478 (4th Cir. 2005); *Presley v. Lakewood Eng'g*, 553 F.3d
     638, 645 (8th Cir. 2009); *Hartford Ins. Co. v. Gen. Elec. Co.*, 526 F. Supp. 2d 250, 257 (D.R.I. 2007); *Chester*
     *Valley Coach Works v. Fisher-Price, Inc.*, No. 99 CV 4197, 2001 U.S. Dist. LEXIS 15902, 2001 WL 1160012,
24   at *8-13 (E.D. Pa. Aug. 29, 2001); *Adams v. J. Meyers Builders, Inc.*, 671 F. Supp. 2d 262, 273 (D.N.H. 2009).

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

1   "[C]ourts may exclude expert testimony concerning fire investigation methodology if the

2   investigator purported to follow NFPA 921 but did not reliably apply it." *United States v. Idaho*

3   *Cty. Light & Power Coop. Ass'n,* No. 3:17-cv-00391-CWD, 2020 U.S. Dist. LEXIS 22030, at

4   *19 (D. Idaho Feb. 7, 2020), citing *Russell v. Whirlpool Corp.*, 702 F.3d 450, 455 (8th Cir. 2012).

5   *See also In re Complaint of Shears,* 2016 U.S. Dist. LEXIS 258, at *6 (court will exclude expert

6   testimony that fails to comport with NFPA 921 standards "when the expert witness explicitly

7   references the guide in reaching his or her conclusions."); *Kendall Dealership Holdings, LLC v.*

8   *Warren Distribution,* 561 F. Supp. 3d 854, 860 (D. Alaska 2021) (expert who purports to follow

9   NFPA 921 must reliably apply it); *State Farm Fire & Cas. Co v. Steffen,* 948 F. Supp. 2d 434,

10  443-46 (E.D. Pa. 2013) (expert who purports to follow NFPA 921 may be excluded for failing

11  to reliably apply NFPA 921's methodology to the fire investigation at issue.).

12       NFPA 921 requires fires investigators to follow the scientific method, which involves: (1)

13  recognizing a need exists to determine what caused the fire; (2) defining the problem; (3)

14  collecting data; (4) analyzing the data; (5) developing a hypothesis based on the data; and (6)

15  testing the hypothesis. *Idaho Cty. Light & Power Coop. Ass'n,* 2020 U.S. Dist. LEXIS 22030, at

16  *19-20 (D. Idaho Feb. 7, 2020), citing NFPA 921, §§ 4.2, 4.3.

17       Rice claims that his investigation was conducted in accordance with NFPA 921. *Exh. 1* at

18  1. As the above cases make clear, because Rice purported to follow NFPA 921, his opinions

19  must be excluded if he did not reliably apply its standards to his investigation. He did not;

20  therefore, his opinions should be excluded as unreliable:

21       i.       **Rice erroneously assumed the notebook must have caused the fire**
                  **because of its degree of damage, in violation of NFPA 921**

22

23       Rice testified at his deposition that, in accordance with NFPA 921, the degree of damage

24  to an appliance is not an adequate indication of origin because the appliance itself may be

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF KEN RICE
Case No. 2:19-cv-00138-TL – Page 5

significantly damaged by a fire. *Exh. 2* at 42:10-18. As NFPA 921, §25.3.2, provides: "The degree of damage to the appliance may or may not be an adequate indication of origin…if there is widespread severe damage, other causes…should be considered and eliminated. If the degree of damage to the appliance is not appreciably greater than the rest of the fire origin, then the appliance should not be chosen solely by virtue of its presence." Photographs of Davis' bedroom show extensive damage to all areas of the room and all objects in the room. *Report of Jeff Colwell, Ph.D., P.E.* (*Exh. 3*), Figure 6. Indeed, Rice admitted that in a fire like the one in Davis' bedroom, an investigator cannot determine cause of the fire by viewing damage to an appliance. *Exh. 2* at 43:24-44:3. Yet, Rice assumed that because the Davis notebook was significantly burned, it must have caused the fire.[2] *Exh. 1* at 14-18. Because of this basic error, combined with Rice's admission that he was not purporting to offer a scientific opinion about the computer's battery pack and cells (*Exh. 2* at 13:9-12), Rice's contention that the fire started in Davis' computer must be excluded because it is speculative and because Rice violated a basic tenet of NFPA 921.

### ii. Rice erroneously assumed that the area of the room with the greatest burn damage was the area of origin, in violation of NFPA 921

Rice assumes that because Davis' mattress sustained substantial damage, that it must have been the origin of the fire. This assumption also violates NFPA 921: "The investigator should not assume that the fire at the origin burned the longest and therefore fire patterns showing the greatest damage must be at the area of origin. Greater damage in one place than in another may be the result of differences in thermal exposure…" NFPA 921, § 18.4.1.3. Rice even admitted at his deposition that, according to NFPA 921, a fire investigator should <u>not</u> assume that the area

---

[2] Rice also opines that lithium-ion batteries in general can pose a fire hazard, but he offers no opinion about the specific batteries in the Davis notebook.

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

with the greatest damage was the area of origin. *Exh. 2* at 19:12-22. *See also Exh. 3* at 26 ("Section 18.4.1.3 of NFPA 921 specifically warns against assuming the area with the greatest burn damage was the area of origin."). Yet, Rice assumed the fire must have started in the "southeast quadrant" of Davis' bedroom (where the mattress was located) because it had the heaviest burn damage. *Id.* Rice violated 18.4.1.3 of NFPA 921 by failing to account for the fact that the mattress was "one of the largest fuel loads in the room" and thus "greater damage in this location would be expected, regardless of where in the room the fire originated." *Id.* at 26-27.

iii.    **Rice improperly disregarded NFPA 921 standards for witness interviews**

Section 18.3.3.14 of NFPA 921 provides:

> Observations by witnesses are data that can be used in the context of determining the origin. Such witnesses can provide knowledge of conditions prior to, during, and after the fire event…Observations are not necessarily limited to visual observations. Sounds, smells, and perceptions of heat may shed light on the origin. Witness statements regarding the location of the origin create a need for the fire investigator to conduct as thorough an investigation as possible to collect data that can support or refute the witness statements. When witness statements are not supported by the investigator's interpretation of the physical evidence, the investigator should evaluate each separately.

Section 14.5.1.5 of NFPA 921 provides:

> All interviews, regardless of their type, should be documented. Audio recording the interview or taking written notes during the interview are two of the most common methods of documenting the interview. An alternative method used to document interviews can be accomplished through the use of video recording. All of these methods, however, may distract or stress the person being interviewed, resulting in some information not being obtained. All recordings must be done in accordance with applicable laws and regulations.

Yevrovich was interviewed by police on January 6, 2016, from 2:44 p.m. to 3:45 p.m. *Exh. 3* at 2, 90. The interview was recorded on video and transcribed by a certified court reporter. *Id.*

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF KEN RICE
Case No. 2:19-cv-00138-TL – Page 7

The transcript of the interview is 89 pages in length, excluding the cover page and index. *Id.* Yevrovich did not object to being recorded and, as evidenced by the transcript (attached to HP's motion for summary judgment), was not reluctant to answer the police officers' questions.

In contrast, on January 8, 2016, Rice spoke with Yevrovich in a church parking lot. Rice could not recall how long the conversation lasted – he made no record of this –only that it lasted under an hour. *Exh. 2* at 31:21-25. Rice did not record the conversation despite having the ability to do so. *Id.* at 32:8-20. He took only one or two pages of notes from the conversation *Id.* at 34:4-8. He did not have Yevrovich sign a written statement (*id.* at 33:7-10), and there is no transcript of the conversation. Yet, Rice opted to rely on his informal, unrecorded conversation with Yevrovich over the police investigators' formal, recorded, transcribed statement which also was supported by physical evidence from the fire scene. Rice provides no explanation for this in his report and makes no attempt to reconcile the discrepancy between his opinions and the formal investigative records, making his conclusions baseless and lacking any scientific basis.

            **iv.**     **Rice failed to consider smoking as a cause of the fire, in violation of NFPA 921**

Sections 19.5 and 19.6 of NFPA 921 require a fire investigator to consider and test alternate causes of a fire in accordance with the scientific method.   Section 19.6.4 states that an investigator "should attempt to disprove, rather than to confirm, [each] hypothesis." Further, under NFPA 921, "the failure to consider alternate hypotheses is a serious error." NFPA 921, § 19.7. *See also United States v. Cervantes,* No. 12-cr-00792-YGR, 2015 U.S. Dist. LEXIS 127048 (N.D. Cal. Sep. 22, 2015) (excluding government's arson and fire investigation experts who, among other things, failed to indicate in their report whether other possible causes of the fire were considered and eliminated).

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF KEN RICE
Case No. 2:19-cv-00138-TL – Page 8

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

1    Rice rejected smoking as a potential cause of the fire by rejecting evidence that did not fit

2    his preconceived theory that the fire started in Davis' computer. As noted above, Yevrovich told

3    police investigators that Davis frequently smoked in his bedroom (*Transcript of Videotaped*

4    *Police Interview of Lynn Yevrovich* (*Exh. 4*) at 52:3-12), especially after they fought, as they had

5    on the date of the fire. *Id.* at 36:17-18. Rice admitted this his deposition. *Exh. 2* at 66:5-8; 70:20-

6    71:10. Rice also admitted that Yevrovich told police officers that she had smelled cigarette

7    smoke coming from Davis' bedroom on the date of the fire. *Id.* at 71:12-16. However, Rice

8    disregarded Yevrovich's statements to police because, supposedly, Yevrovich told him during

9    their unrecorded conversation in the church parking lot that Davis did not smoke in his bedroom.

10   *Id.* at 65: 19-66:3.

11   Despite Yevrovich's statements to police, Rice testified that he rejected smoking as the

12   cause of the fire because no smoking materials were found at the fire scene. *Id.* at 66:20-22. Yet,

13   he was forced to acknowledge that a cigarette butt was in fact found on the floor of Davis' room.

14   *Id.* at 68:20-69:4. Confronted with this evidence, Rice surmised that the cigarette butt did not

15   cause the fire because "there's nothing burned around it" (*id.* at 69:8-11), but at the same time,

16   he admitted that he does not know where it was at the time of the fire, and he admitted that

17   discarding cigarette butts on the floor was indicative of someone not taking proper care of

18   cigarette butts. *Id.* at 69:15-70:10. He further admitted that the butt could have moved during

19   fire suppression efforts. *Id.* at 69:6-23. Rice also admitted that so-called "fire-safe" cigarettes

20   (such as the kind Davis may have smoked) can still cause fires. *Id.* at 76:9-15. In fact, even

21   though he attempted to rule out cigarettes as the cause of the fire due to their "fire-safe" qualities,

22   when confronted with the facts at his deposition, Rice admitted that "thousands and thousands

23   of fires" have been caused by so-called fire-safe cigarettes. *Id.*

24

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

Thus, incredibly, Rice ruled out smoking as a cause based upon the existence of "fire-safe" cigarettes (even though they have caused thousands and thousands of fires) and based on the fact that "there was no evidence" that Davis smoked in his room even though Yevrovich stated in her videotaped police interview that Davis smoked in his room and even though Rice himself photographed a *smoked* cigarette on the floor of Davis's room.  This is yet another example of Rice turning a blind eye to facts that do not support his opinions in the case, without regard for generally accepted literature, witness statements and even his own photographs.

> **v.  Rice failed to consider that Davis might have set the fire, in violation of NFPA 921**

Rice committed the "serious error" of failing to consider the hypothesis that Davis had set the fire. *See* NFPA 921, § 19.7. When asked at his deposition whether he considered the possibility that Davis had set the fire, Rice testified, "[T]ypically we look at means, motives, and opportunity, correct? So he had… the means and the opportunity. I just couldn't come up with a clear motive as to why he would want to destroy his own – little of what he had but let alone his personal belongings." *Exh. 2* at 78:20-25. He explained that when he spoke with Yevrovich in an unrecorded interview allegedly in a  church parking lot, "[s]he just never alluded to the fact that [Davis] wanted to, you know, destroy anything he had." *Id* at 78:17-18.

Rice's reasoning is astounding given the repeated statements Yevrovich made in her recorded police interview that Davis had set the fire. Specifically, Yevrovich told the police that she had broken up with Davis earlier in the afternoon, and upon hearing the news that she was leaving him, Davis swore at her, went into his room, and continued drinking (as he had since the morning). *Exh. 4* at 11:11-13; 19:16-23; 20:19-20. She told police that Davis set the fire (*id.* at 59:9-10) and that she believed Davis "deliberately didn't want to live." *Id.* at 49:22. She explained that Davis' state of mind was, "She's leaving me. I hate her. I don't want to live

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

anymore. I'm going to set this place on fire and burn up everything she has…And I'm just going to burn her place up so that she doesn't have anything anymore and I'll just die in the fire." *Id.* at 74:8-16.

Yevrovich also told police that Davis' alcohol consumption played a role in him setting the fire: "I'm pretty sure the fact that he was drinking did play a factor into whatever he did that night, you know, whether he – whether he did it because he was angry and drunk or whether he accidentally did it because he was out of it drunk. Either way, he was drunk. That's how I see it. And I don't know that he was crazy drunk and did it that way or whether he was deliberate and did it that way because he was so out of his mind anyway..." *Id.* at 73:5-15.

Rice admitted at his deposition that Yevrovich suggested a motive to police. *Exh. 1* at 79:8-10. He also admitted that Yevrovich told police that she thought that Davis had set the fire (*id.* at 79:21-24); that she and Davis had a significant dispute prior to the fire in which Davis became angry and swore at her before going into his bedroom (*id.* at 80:1-20); and that Yevrovich may have mentioned to police that Davis did not want to live anymore and intended to burn the apartment. *Id.* at 81:5-82:2. Rice conceded at his deposition that Davis had the means and opportunity to set the fire but, incredibly, contends that he was unaware of any potential motive to set the fire. However, Rice can only reach this conclusion regarding the lack of motive, by his own admission, by disregarding everything Yevrovich told the police. *Id.* 82:3-10. Notably, Rice admits that what Yevrovich told the police was, in fact, motive (*id.* 79:8-10); he simply elects to disregard it because, apparently, he never asked Yevrovich about it when they spoke.

      **vi.**   **Rice failed to identify any failure of safety devices in the Davis notebook, in violation of NFPA 921**

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

Although Rice's opinions about Davis' computer should be disregarded on the grounds that Rice admits that he conducted no scientific analysis, it is also worth noting that Rice failed to abide by Section 19.4.4.2.1 of NFPA 921, which states that an investigator should investigate and explain contributing factors to ignition, including "[h]ow safety devises and features designed to prevent the fire from occurring operated or failed to operate." Rice never considered any safety components in the computer that failed or how they failed. Thus, his opinion fails to comply with NFPA 921 for this reason as well.

## CONCLUSION

For the reasons set forth above, plaintiff's expert Ken Rice's testimony must be excluded because his opinions are speculative, he failed to follow NFPA 921 despite claiming to do so, and he failed to follow the scientific method.

I, Kenneth M. Roessler, certify that the above memorandum contains 3,816 words (exclusive of the caption, signature block, and certificate of service), in compliance with the Local Civil Rules.

*/s/ Kenneth M. Roessler*
Kenneth M. Roessler, WSBA 31886

Respectfully submitted,

Defendant, HP, Inc.,
By its attorneys,

*/s/ Kenneth M. Roessler*

Kenneth M. Roessler,
Mix Sanders Thompson
1420 Fifth Ave., Suite 2200
Seattle, WA 98101
(206) 521-5989
ken@mixsanders.com

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF KEN RICE
Case No. 2:19-cv-00138-TL – Page 12

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

1

2                                        */s/ Christopher G. Betke*
                                       Christopher G. Betke, pro hac vice

3                                        Coughlin Betke LLP
                                       175 Federal St.

4                                        Boston, MA 02110
                                       (617) 988-8050

5                                        cbetke@coughlinbetke.com

6

7                           **CERTIFICATE OF SERVICE**

8        I certify that on the date below I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

9

10 **_Attorney for Plaintiff Philadelphia_**        **_Attorney for Defendant_**
**_Indemnity Insurance Company_**              **_Hewlett-Packard Company_**

11 John R. MacMillan                          Christopher G. Betke
MacMillan Scholz & Marks              Coughlin & Betke

12 900 SW 5th Ave Suite 1800             175 Federal St Ste 1450
Portland OR 97206                        Boston MA 02110

13 jmacmillan@msmlegal.com             cbetke@coughlinbetke.com
☒CM/ECF System                         ☒CM/ECF System

14

15 DATED: May 30, 2023

16                                        s/Kalli Lehmann
                                       Mix Sanders Thompson, PLLC

17                                        1420 Fifth Avenue, 22nd Floor
                                       Seattle, WA  98101

18                                        Tel:    206-521-5989
                                       Fax:   888-521-5980

19

20

21

22

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF KEN RICE
Case No. 2:19-cv-00138-TL – Page 14

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980

1

## CERTIFICATE OF SERVICE

2          I, Kalli Lehmann, certify that on May 30, 2023, I electronically filed the foregoing

3   Defendant HP's Motion to Exclude the Testimony and Opinions of Expert Ken Rice;

4   Declaration of Christopher G. Betke in Support of Motion (With Exhibits); with the Clerk of the

5   Court using the CM/ECF System and caused to be served a true and correct copy via the

6   method indicated below and addressed to the following:

7   ***Attorney for Plaintiff Philadelphia***          ***Attorney for Defendant***
    ***Indemnity Insurance Company***                  ***Hewlett-Packard Company***
8   John R. MacMillan                                  Christopher G. Betke
    MacMillan Scholz & Marks                           Coughlin & Betke
9   900 SW 5th Ave Suite 1800                          175 Federal St Ste 1450
    Portland OR 97206                                  Boston MA 02110
10  jmacmillan@msmlegal.com                            cbetke@coughlinbetke.com
    ☒CM/ECF System                                     ☒CM/ECF System

11

12

13                                                     s/_____
                                                       Mix Sanders Thompson, PLLC
14                                                     1420 Fifth Avenue, 22nd Floor
                                                       Seattle, WA  98101
15                                                     Tel:    206-521-5989
                                                       Fax:   888-521-5980

16

17

18

19

20

21

22

23

24

DEFENDANT HP'S MOTION TO EXCLUDE THE TESTIMONY
AND OPINIONS OF KEN RICE
Case No. 2:19-cv-00138-TL – Page 15

Mix Sanders Thompson, PLLC
1420 Fifth Avenue, Suite 2200
Seattle, WA  98101
Tel: 206-521-5989
Fax: 888-521-5980