The Honorable Tana Lin

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation, as subrogee of DH&G, LLC, <br><br>              Plaintiff, <br><br>v. <br><br>HEWLETT-PACKARD COMPANY, <br><br>              Defendant. | ) ) ) ) ) Case No.: 2:19-cv-00138-RSM ) ) PLAINTIFF'S MEMORANDUM OF LAW OP- ) POSING DEFENDANT'S MOTION TO EX- ) CLUDE TESTIMONY AND OPINIONS OF ) MICHAEL ESKRA ) ) ) |

## **INTRODUCTION**

Plaintiff Philadelphia Indemnity Insurance Company, as subrogee of DH&G, LLC ("Philadelphia Indemnity") submits this Memorandum of Law in opposition to Defendant Hewlett-Packard Company's Motion to Exclude the Testimony and Opinions of Michael Eskra.

This case arises out of a fire that occurred on December 31, 2015, at an apartment complex known as the Bluffs at Evergreen, in Everett, Washington. The cause of the fire is disputed. Supported by expert testimony, Plaintiff asserts that the fire was caused by a battery cell in a computer manufactured and sold by Defendant Hewlett-Packard Company ("HP") and owned by Mr. Mark Davis ("the Laptop"). Because Defendant denies this allegation, it is attempting to exclude the expert testimony of battery expert Michael Eskra, who opines that the subject fire was caused by an internal short in a cell of a lithium-ion battery in the Laptop. The testimony and opinions of

1 – MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL ESKRA

Michael Eskra are relevant and are supported by reliable methodology and analysis, so the Court should deny Defendant's Motion in its entirety.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert* and its progeny, a district court's inquiry into admissibility is a flexible one. *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.,* 738 F.3d 960, 969 (9th Cir.2013). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook,* 598 F.3d 558, 565 (9th Cir.2010) (citation and quotation marks omitted).

"[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* at 564 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car,* 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or

2 –  MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL ESKRA

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969–70.

The test of reliability is flexible. *Estate of Barabin v. AstenJohnson, Inc.,* 740 F.3d 457, 463 (9th Cir.2014) (en banc). The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance. *Id.; see also Primiano,* 598 F.3d at 564. But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano,* 598 F.3d at 564 (citations and quotation marks omitted); *see also Barabin,* 740 F.3d at 463. The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano,* 598 F.3d at 564–65. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). A district court should not make credibility determinations that are reserved for the jury. *Id.*

Defendant seems to suggest that any deviation from NFPA 921 renders an expert's testimony inadmissible. However, any flaws in an expert's "NFPA 921 methodology go the weight of [the expert's] testimonial evidence, not to the question of its admissibility." *State Farm Fire & Cas. Co. v. Hewlett-Packard Co.,* No. 13-CV-0328-TOR, 2015 WL 5821898, at *4-*5 (E.D. Wash. Oct. 5, 2015) (when party moved to preclude expert witness' testimony on the ground that his methodology deviated from NFPA 921 standards, court denied motion on that ground). "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method" does

3 – MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL ESKRA

not render expert testimony inadmissible. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1048 (9th Cir. 2014) (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 267 (2d Cir.2002)). "A more measured approach to an expert's adherence to methodological protocol is consistent with the spirit of *Daubert* and the Federal Rules of Evidence: there is a strong emphasis on the role of the fact finder in assessing and weighing the evidence." *Id*. (citing *Daubert,* 509 U.S. at 594–95, 113 S.Ct. 2786).

## ARGUMENT

### I.   Michael Eskra's Methodology Was Reliable.

Defendant's first argument is that Michael Eskra's opinions are not based on reliable testing or methodology. This argument fails. Eskra's methodology was sound and was grounded in the scientific method.

The procedure used by Mr. Eskra was systematic, thorough, and detailed. He inspected the artifacts collected from the fire scene; reviewed scene and laboratory photographs, CT scan images of the battery cells, and other experts' reports; tested an exemplar laptop on both a hard and soft surface; and reviewed numerous discovery documents. *Report of Michael Eskra (Defendant's Exh. 1)* at 2. After this procedure, Eskra concluded that "The artifact cell 2 developed an internal short and was causal in the fire at the Bluffs at Evergreen." *Id*. at 32. He then offered two possible reasons why the internal short may have occurred: a mechanical defect such as a burr or twisted tabbing, and the cell voltage being driven "to a level where cell damage occurs that is well known to cause internal cell failures." *Id*.

#### a.   Eskra's Exemplar Testing Was Reliable.

Defendant takes issue with the testing run by Eskra on an exemplar laptop because the battery packs and cells were not manufactured by the same company as the cells in Mr. Davis's laptop. However, the parts used by Eskra were from an original equipment manufacturer ("OEM"),

4 –   MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL ESKRA

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

so they should be virtually identical to the battery packs in Davis's computer. *Deposition of Michael Eskra (Defendant's Exh. 2)*, at 19:1 – 22:9. Furthermore, the fire occurred in 2015, and Eskra did his testing in 2020. Expecting Mr. Eskra to acquire exact duplicates of the cells in Mr. Davis's computer is unrealistic (and unnecessary, because any of HP's suppliers should be manufacturing virtually identical products).

Part of Defendant's complaint about the exemplars used is that Eskra opines that a manufacturing defect may have caused the internal short in Cell 2. Defendant argues that without an identical exemplar, Eskra's testimony is irrelevant. However, the only case Defendant cites in support of this argument does not stand for this proposition. In *Romero v. S. Scwhab Co.*, the trial court precluded only the expert's assertion that the exemplar shirts were manufactured by the same company. 15-CV-815-GPC-MDD, 2017 WL 5885543, at *8 (S.D. Cal. Nov. 29, 2017) ("As such, the Court GRANTS in part Plaintiff's motion to exclude Dr. Howitt from asserting that all, except one exemplar shirt, RN 41381, were manufactured by RLC.") The court did not exclude the expert's testimony outright. *See id*.

Citing its own expert's affidavit, Defendant argues that testing non-identical exemplars is not a generally accepted methodology in battery science. However, "'General acceptance' is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, (1993). Eskra conducted his testing with virtually identical OEM parts, so his testing of the exemplar laptop and batteries is relevant and reliable.

    b. **Eskra's Use of the Dog Bed Was a Valid Test of the Battery's Function on a Soft Surface.**

Mr. Eskra tested the exemplar laptop on a soft dog bed, to "see if a soft, furry thing would restrict airflow and what type of temperatures we could see in kind of short order." *Deposition of*

5 –   MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL ESKRA

MACMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

*Michael Eskra (Defendant's Exh. 2)*, at 59:4-17. He opines that on a bed, the vent would be partially blocked, and "most of the HP laptop fires that [he has] come across are always on a soft surface." *Id*.

Defendant argues that this dog bed was "possibly contaminated" by dog hair, so the testing is unreliable. Defendant quotes deposition testimony from Mr. Eskra in support of this assertion. However, when read in context, it is clear that Mr. Eskra does not believe that dog hair could have contaminated the exemplar computer. *Id*. at 59:24 – 60:25. As an expert with over 30 years of experience in his field, surely Mr. Eskra would have noticed dog hair contaminating his testing surface. Through unfounded conjecture, Defendant is attempting to create an issue where one does not exist.

Defendant also seems to argue that because Eskra was not attempting to recreate Mr. Davis's bed, his testing is unreliable. On the contrary, it clearly would be unreliable if Eskra were to opine that a dog bed creates identical conditions to a human bed. Eskra does not misrepresent his intent for this test – he was merely trying to "see if a soft, furry thing would restrict airflow." *Id*. at 59:4-17. Because his testing shows what he is purporting to measure, it is reliable and admissible.

 II.   **Eskra's Opinion is Not Dependent Upon the Existence of an Observable Mechanical Defect.**

In his report, Michael Eskra authoritatively states that Cell 2 developed an internal short. *Report of Michael Eskra (Defendant's Exh. 1)* at 32. He was able to determine this by examining CT scan images of the cell. *Id*. at 10-11, 32. Eskra then offers two possible causes of this internal short, one of which is a mechanical defect "such as a burr or twisted tabbing." *Id*. In his deposition, Eskra stated that he had ruled out the possibility of a burr, but he did see evidence of twisted

6 –   MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL ESKRA

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

tabbing. *Deposition of Michael Eskra (Defendants' Exh. 2, Plaintiff's Exh. A)*, at 83:17 – 84:8, 90:22 – 91:8.

Defendant now argues that this twisted tap hypothesis has been disproven and concludes that Eskra's opinion is unreliable. This argument fails for two reasons: (1) the theory has not been disproven, and (2) Eskra's opinion is not dependent upon proof of a twisted tab.

Defendant claims that a sentence in Eskra's report contradicts his hypothesis about twisted tabbing. However, that sentence merely states that it is "not apparent that the foil-to-tab connection caused the short such as would be expected with a manufacturing defect." *Report of Michael Eskra (Defendant's Exh. 1)* at 11. Despite what Defendant claims, Eskra does not "rule out" the possibility of twisted tabbing contributing to the internal short. In fact, later in his report Eskra explicitly states that twisted tabbing of the cell could have contributed to initiate the failure of the cell. *Id*. at 32.

Defendant also argues that its own expert's affidavit about the state of the tabbing conclusively disproves Eskra's hypothesis. The Court need not, and should not, take this self-serving affidavit as established fact.

Most importantly, Eskra's ultimate opinion – that Cell 2 developed an internal short and was causal in the fire – is not dependent upon the existence of an observable manufacturing defect. Eskra mentioned the possible burr or twisted tabbing merely as possible explanations for why the short occurred. He was able to arrive at his opinion, and to "eliminate the possibility that the cell was forced into a thermal runaway by the fire or external heating," by examining the CT images of the cells. *Id*. His conclusion was not predicated upon him finding a manufacturing defect during his examination. Thus, Eskra's opinion is reliable and admissible with or without his hypothesis on twisted tabbing.

7 –   MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL ESKRA

### III. Eskra is Qualified to Opine on Battery Management Systems.

Michael Eskra has over 30 years of experience developing, designing, and manufacturing lithium-ion batteries, and has "broad working knowledge of energy, battery and power source development, battery products, processes…" *Report of Michael Eskra (Defendant's Exh. 1)* at 40. He provides several pages of detailed information and analysis on battery management systems in his written report. *Id*. at 27-32. In his deposition, he offers many pages of sophisticated testimony about them. *Deposition of Michael Eskra (Defendant's Exh. 2, Plaintiff's Exh. A)*, at 35:16 – 36:12, 47:8 – 50:12, 63:2 – 64:2, 81:10 – 82:16, and 96:24 – 99:14.

In his deposition, Eskra said "I'm not an SMBus expert," which Defendant argues disqualifies him to offer any testimony on battery management systems. *Id*. at 49:4. This argument fails for two reasons.

First, Mr. Eskra's modest appraisal of his expertise is not binding on the Court. Mr. Eskra is not an attorney, and he was not purporting to apply FRE 702 when he made this statement. Second, it is clear from the record that Mr. Eskra has extensive knowledge of battery management systems and how they interact with lithium-ion batteries. He is adequately qualified to testify as to how the SMBus interacted with the battery in Mr. Davis's laptop.

### IV. Eskra's Opinion Is Based on Reliable and Systematic Analysis of the Battery Cells.

Defendant attempts to discredit Mr. Eskra's methodology by mischaracterizing the basis for his opinion. Defendant implies that Eskra looked at only one particular element of the damage to Cell 2, and then came to his conclusion. In truth, Eskra systematically analyzed the battery cells, examining the artifacts themselves, analyzing CT scan imaging, and conducting his own tests. In his analysis of the artifacts and CT imaging, he reviewed the position of the can, the jelly roll, and

8 –   MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL ESKRA

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

the vent, and looked at cross-sections of the cells in the different areas. *Deposition of Michael Eskra (Plaintiff's Exh. A)* at 56:22 – 57:9; *Report of Michael Eskra (Defendant's Exh. 1)* at 10-12. His opinion is based on a comprehensive examination of the battery cells. In his deposition, Mr. Eskra explained: "there isn't just one thing you look at. You have to take all the evidence that you have and analyze it." *Deposition of Michael Eskra (Plaintiff's Exh. A)* at 56:3-5. Defendant does not cite to any authority to suggest that this is an unreliable method to determine fire causation.

Defendant cites another case in which HP was the defendant, *Gopalratnam v. Hewlett-Packard Co.*, to argue that Eskra's methodology is invalid. 13-CV-618-PP, 2017 WL 1067768 (E.D. Wis. Mar. 21, 2017), aff'd, 877 F.3d 771 (7th Cir. 2017). However, Mr. Eskra does not base his opinion on any of the three bases relied upon by the expert in *Gopalratnam*: "(1) that Cell A acted as a projectile; (2) Cell A was found to have a different shape post-fire than the remaining two cells; and (3) Cell A expelled its contents.". *Id*. at *9. Defendant misrepresents Eskra's analysis, claiming that Eskra used "this exact same differential damage argument," which is clearly not the case.

Because Eskra's opinions are based on a systematic, comprehensive examination of the battery cells, it is reliable and admissible.

V.   **Eskra's Conclusion Is Not Speculative.**

Defendant seems to argue that because Michael Eskra is not 100% certain about what occurred in Mr. Davis's bedroom, his opinion is inadmissible speculation. This argument fails for two reasons. First, Eskra does give an authoritative opinion as to what caused the fire – an internal short that occurred in Cell 2. This is not speculation.

Second, as to Eskra's hypotheses for the causes of the internal short, the law explicitly allows him the latitude to offer these opinions. The FRE 702(b) requirement that an expert's opinion be based on "sufficient facts or data" does not preclude an expert from making projections

9 –   MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL ESKRA

based on reliable methodology. *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022). Experts working in specialized, scientific, and uncertain fields regularly "extrapolate from existing data" and generate novel hypotheses about complex issues. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). For this reason, "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592–93.

No expert can be certain of exactly what happened that led to the fire at the Bluffs at Evergreen. Mr. Eskra formulated his hypotheses from existing data and reliable analytical methods, so his testimony is relevant, reliable, and admissible. A jury should be allowed to assess and weigh all the evidence and reach its own conclusion.

## CONCLUSION

For all the foregoing reasons, Plaintiff requests that the Court deny Defendant's Motion in its entirety.

DATED: June 26, 2023.                    MacMILLAN, SCHOLZ, & MARKS, LLC

By: _____
John R. MacMillan, WSB #27912
MacMillan Scholz & Marks
900 SW Fifth Ave., #1800
Portland, OR 97204
T: (503) 224-2165
F: (503) 224-0348
E: jmacmillan@msmlegal.com
*Of Attorneys for Plaintiff*

10 – MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL ESKRA

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165