The Honorable Tana Lin

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation, as subrogee of DH&G, LLC,<br><br>                    Plaintiff,<br><br>         v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>                    Defendant. | )<br>)<br>)<br>) Case No.: 2:19-cv-00138-RSM<br>)<br>) PLAINTIFF'S MEMORANDUM OF LAW OP-<br>) POSING DEFENDANT'S MOTION FOR<br>) SUMMARY JUDGMENT<br>)<br>)<br>) |

## **INTRODUCTION**

Plaintiff Philadelphia Indemnity Insurance Company, as subrogee of DH&G, LLC ("Philadelphia Indemnity") submits this Memorandum of Law in opposition to Defendant Hewlett-Packard Company's Motion for Summary Judgment.

This case arises out of a fire that occurred on December 31, 2015, at an apartment complex known as the Bluffs at Evergreen, in Everett, Washington. The cause of the fire is disputed. Plaintiff asserts that the fire was caused by a battery cell in a computer manufactured and sold by Defendant Hewlett-Packard Company ("HP") and owned by Mr. Mark Davis ("the Laptop"). Because Plaintiff's claims are supported by relevant, reliable expert testimony, Defendant's Motion for Summary Judgment should be denied.

1 – PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**STATEMENT OF FACTS**

In general, Plaintiff does not take issue with the factual background of the case offered by Defendant. However, Plaintiff does wish to offer some clarifications and additions.

Defendant asserts that Davis "continued consuming alcohol" in his bedroom after his argument with Lynn Yevrovich. *Defendant Memorandum of Law*, 2:16. However, the testimony cited by Defendant does not stand for this proposition. In the cited testimony, Yevrovich merely explains that Davis was drinking vodka on the day in question. *Yevrovich Interview (Defendant's Exh. 1)*, 19:16-23. Further, there is no evidence that Yevrovich actually observed Davis consume alcohol while he was in his bedroom.

Defendant notes that Yevrovich told police that she "smelled cigarette smoke coming from Davis' room," seemingly implying that a cigarette caused the fire. *Defendant Memorandum of Law*, 2:17. The Court should be aware that the testimony cited by Defendant reads "I smelled cigarette smoke *earlier*," which implies that she did not smell cigarette smoke in close proximity to the time the fire started. *Yevrovich Interview (Defendant's Exh. 1)*, 51:23-24 (emphasis added). Later in the same interview, Yevrovich explains how she learned of the fire: "I was sitting out there watching television, when I – I smelled something, and it wasn't cigarette smoke, but it was smoke." *Id*. at 76:16-18. This aligns with what she later told Plaintiff's expert Ken Rice of Jensen Hughes. *Jensen Hughes Report*, 5 ("She was watching Big Bang Theory when she smelled smoke approximately 1 to 1.5 hours later. It was definitely not cigarette smoke.").

Defendant quotes Yevrovich's belief that Davis "deliberately didn't want to live," but omits important context from the quote. *Defendant Memorandum of Law*, 2:24 – 3:1. The full quote is: "So it does seem like he deliberately didn't want to live, but I'm not sure that means he set the fire." *Yevrovich Interview (Defendant's Exh. 1)*, 49:21-23.

2 – PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

Defendant quotes Yevrovich's statements regarding what she believed Davis's state of mind was at the time. *Defendant Memorandum of Law*, 3:1-4. Defendant omits the fact that this is merely what Yevrovich believed Davis "might have been thinking." *Yevrovich Interview (Defendant's Exh. 1)*, 74:17-18. In fact, the next two sentences of the interview transcript read: "Or maybe he's standing there staring at it because he's out of his mind, you know. I don't know, because either way he was -- he got really drunk." *Id*. at 74:19-22. Clearly, Yevrovich was not certain as to Davis's state of mind, despite what Defendant asserts.

Defendant cites Yevrovich's statements suggesting that Davis's alcohol consumption might have played a role in causing the fire, implying that Yevrovich's speculation is probative as to the issue of causation. *Defendant Memorandum of Law*, 3:5-11. However, the Court should note that Davis was in a separate room with the door closed for about 90 minutes prior to the fire. *Yevrovich Interview (Defendant's Exh. 1)*, 5:16-18, 73:24.

Defendant notes some statements from Yevrovich that suggest that the fire could have been caused by smoking materials. *Defendant Memorandum of Law*, 3:12-19. The written report from Plaintiff's expert Jensen Hughes contains the following on-site observations related to this subject:

> 10. No discarded smoking materials, i.e. cigarette butts, were found in the area of fire origin, or in the debris processed from that area. A single cigarette butt was found under the TV that was on the carpeted floor in the southwest quadrant. There was no corresponding, pre-fire, burning or charring of the carpet near the cigarette butt.
> 11. An unburned, empty package of Complete brand cigarettes was found on the floor near the closet.
> 12. No ashtrays, butt-cans, etc. were found in the southwest bedroom.
> 13. A metal can filled with cigarette buts [sic] was found outside on the porch.
> 14. No flammable liquid containers were found in the area of fire origin. One burned, metal, fluid canister was found on top of the dresser on the west wall. A partially burned butane container was found in a drawer of the same dresser.
> 15. The area surrounding the bed was scanned with the combustible gas detector and no indications of combustible liquid vapors was found.
> 16. No evidence of e-cigarette or vaping devices, materials, etc. were found in the southeast bedroom. No other Li-ion battery powered devices were found, or known to be located, in the southeast bedroom.

3 – PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Jensen Hughes Report*, 12. The report also contains two-and-a-half pages of analysis as to whether it is likely that smoking materials caused the fire, ultimately determining that it was not likely. *Id*. at 23-25.

On two occasions, Defendant writes that Plaintiff ignored Yevrovich's testimony pertaining to the fire. ("Ignoring Yevrovich's firsthand account of the incident…" *Defendant Memorandum of Law*, 3:22-23; "Ignoring Yevrovich's firsthand account that Davis had started the fire in his bedroom." *Id* at 4:15.) However, the Jensen Hughes report explicitly addresses the statements made by Yevrovich during her 911 call and her interview with the Everett police and fire departments. *Jensen Hughes Report* at 7-9, 20. Also, claiming that Yevrovich had a "firsthand account" of Davis starting the fire is misleading, at best. It is undisputed that Yevrovich did not observe the fire starting.

## **LEGAL STANDARD**

Under Fed. R. Civ. P. 56, summary judgment can be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts are those that may affect the case's outcome. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

4 – PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

**ARGUMENT**

**I.     Plaintiff concedes that the WPLA preempts its negligence claim.**

Plaintiff does not refute Defendant's contention about the exclusivity of remedies under the Washington Product Liability Act. Accordingly, Plaintiff will proceed in this case under only its claim for strict product liability.

**II.    Plaintiff's claim is supported by relevant and reliable expert testimony.**

Defendant's Motion for Summary Judgment is predicated on its *Daubert* motions to exclude the testimony of Ken Rice and Michael Eskra. Because those motions fail, Defendant's Summary Judgment Motion also fails.

Cause-and-origin expert Ken Rice, of Jensen Hughes, made multiple visits to the fire scene, interviewed Lynn Yevrovich, and reviewed numerous documents and materials, including laboratory testing results, apartment floor plans, public agency documents, technical reports, applicable codes and standards, and photographs of the scene. *Jensen Hughes Report*, 1-2. Pursuant to NFPA 921, he analyzed witness statements, fire patterns, fire dynamics, and arc mapping. *Id*. at 20-22. In attempting to rule out all other possible causes of the fire, Rice investigated whether Mr. Davis could have intentionally started the fire with an open flame and whether Davis could have accidentally set the fire while smoking in bed. *Id*. at 22-25. Rice conducted a thorough, systematic, scientific analysis of all the available information, and concluded that the fire was caused by an internal failure of the lithium-ion battery in Mr. Davis's laptop.

The procedure used by battery expert Michael Eskra was similarly systematic, thorough, and detailed. Mr. Eskra inspected the artifacts collected from the fire scene; reviewed scene and laboratory photographs, CT scan images of the battery cells, and other experts' reports; tested an exemplar laptop on both a hard and soft surface; and reviewed numerous discovery documents. *Report of Michael Eskra* at 2. After this procedure, Eskra concluded that "The artifact cell 2 developed an internal short and was causal in the fire at the Bluffs at Evergreen." *Id*. at 32. He then

5 – PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MACMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

offered two possible reasons why the internal short may have occurred: a mechanical defect such as a burr or twisted tabbing, and the cell voltage being driven "to a level where cell damage occurs that is well known to cause internal cell failures." *Id*.

Plaintiff's claims are supported by relevant, reliable evidence showing that the fire was caused by the fault of Defendant HP. There is more than enough evidence for a reasonable jury to return a verdict for Plaintiff, so there is a genuine dispute of material fact, and summary judgment is inappropriate. Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248.

## CONCLUSION

Defendant's Motion for Summary Judgment is dependent upon success in its simultaneous *Daubert* motions. Because those motions should be denied for all the reasons set forth in Plaintiff's responsive memoranda, the Court should also deny this Motion for Summary Judgment.

DATED: June 26, 2023.         MacMILLAN, SCHOLZ, & MARKS, LLC

By: _____
John R. MacMillan, WSB #27912
MacMillan Scholz & Marks
900 SW Fifth Ave., #1800
Portland, OR 97204
T: (503) 224-2165
F: (503) 224-0348
E: jmacmillan@msmlegal.com
*Of Attorneys for Plaintiff*

6 – PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165