The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation, as subrogee of DH&G, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HEWLETT-PACKARD COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) Case No.: 2:19-cv-00138-TL <br> ) <br> ) PLAINTIFF'S MOTIONS IN LIMINE <br> ) <br> ) **NOTE ON MOTION CALENDAR:** <br> ) **SEPTEMBER 29, 2023** <br> ) <br> ) **ORAL ARGUMENT REQUESTED** |

# INTRODUCTION

This case arises out of a fire that occurred on December 31, 2015, at an apartment complex known as the Bluffs at Evergreen, in Everett, Washington. The cause of the fire is disputed. Plaintiff asserts that the fire was caused by a battery cell in a computer manufactured and sold by Defendant Hewlett-Packard Company and owned by Mr. Mark Davis. Plaintiff has supported its claims with relevant, reliable expert testimony. Defendant refutes Plaintiff's assertion as to the cause of the fire, but it has not produced admissible, credible evidence offering any plausible alternative. Defendant likely intends to offer hearsay statements of Lynn Yevrovich to suggest to the jury that Mark Davis's conduct could have caused the fire. For the several reasons explained below, these statements should be excluded.

1 – PLAINTIFF'S MOTIONS IN LIMINE

Plaintiff anticipates that Defendant will attempt to offer the expert report and related testimony of Nash Johnson. Johnson's opinions on the recoverability of hazardous material abatement and code updates are inadmissible legal conclusions without sufficient basis and contrary to Washington law and should be excluded.

## FACTUAL BACKGROUND

On December 31, 2015, a fire occurred in building E of the Bluffs at Evergreen apartment complex. (Dkt. #1-2 – Complaint, 2.) The fire originated in Unit E101, a two-bedroom apartment leased by Mark Davis and Lynn Yevrovich. (*Id*.) More specifically, the fire originated in the bedroom used by Mark Davis. (*Id*.) Mr. Davis perished in the fire, while Ms. Yevrovich survived.

Mark Davis owned a laptop computer manufactured by Defendant Hewlett-Packard Company ("HP"), a 15" Intel Quad Core 4 GB/ITB laptop, model 15-AC132DS (the "Laptop"). (*Id*. at 3.) Based on the opinions of a cause-and-origin expert and a battery expert, Plaintiff asserts that the fire was caused by an internal failure of the lithium-ion battery on the Laptop. (*Id*.)

The events prior to and during the fire are disputed, and the only surviving witness – Lynn Yevrovich – has given conflicting information and has since passed away. In a recorded interview Ms. Yevrovich gave jointly to the Everett Police and Fire Departments ("the Recorded Interview"), Ms. Yevrovich said that, about an hour or 90 minutes before the fire began, she told Mr. Davis that she wanted to "see other people," find a job, and move out of the apartment. (Exh. 1 – Interview Transcript, 11-12.) After that, Mr. Davis went into his bedroom and closed the door, and Ms. Yevrovich remained in the living room watching television. (*Id*. at 5, 11.) After Mr. Davis went into his bedroom, he and Yevrovich did not have any other interactions until the fire began. (*See id*. at 11, 79.)

Based on Ms. Yevrovich's representations, it is unclear whether she first smelled the smoke or saw it coming from Davis's room. (*Id*. at 6-7, 31; Exh. 2 – Hanks Report, 2; Exh. 3 – Jensen

2 – PLAINTIFF'S MOTIONS IN LIMINE

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

Hughes Report, 6.) It is also unclear what occurred when she opened the door to Davis's bedroom. (*See* Dkt. No. 59 – Order at note 3.)

According to Officer Ryan Hanks' written report ("Hanks Report"), Yevrovich said that "She tried to wake him [Davis] up, however he was intoxicated and would not get up. She tried to wake him up until the fire spread to the molding and walls." (Hanks Report, 2.) During the Recorded Interview, however, Yevrovich stated "I opened the door and I saw him standing in the middle of the room, just staring at his mattress." (Interview Transcript, 7.)

During an interview with expert Ken Rice ("Rice Interview"), Yevrovich stated that Davis "would not leave." (Jensen Hughes Report, 5; Exh. 4 – Rice Notes, 1.) In her written statement to EPD – a fifth statement from Ms. Yevrovich - Yevrovich noted that she "yelled at Mark Davis to get out but he wouldn't go." (Exh. 5 – Written Statement.) During the Recorded Interview with EFD and EPD, Yevrovich seems to say that the last time she saw Davis, he was still in his bedroom. (Interview Transcript, 9, 18-19.) However, during her 911 call, Yevrovich states "We got out the door," and it sounds as if both Davis and Yevrovich had exited the apartment unit. (Exh. 6 – Audio Recording[1]; Jensen Hughes Report, 8; Exh. 7 – Atwood Report, 5.) Detective Atwood notes in his report:

> It should be noted that Davis was located, deceased, outside the apartment in the breezeway. The 911 call actually clarified what was found on the scene at the conclusion of the fire. It is unknown why Yevrovich describes the scene as her leaving Davis in the bedroom and that being the last time that she saw him.

(Atwood Report, 5.)

During her interview with EFD and EPD, Yevrovich stated that Mr. Davis made no noise while the fire was going, "except maybe coughing." (Interview Transcript, 79-80.) However, in

---

[1] Depending on the Court's preference, audio recording of the 911 call can be sent to the Court via CD or digital audio file.

3 – PLAINTIFF'S MOTIONS IN LIMINE

the recording of the 911 call, a male voice can be heard in the background on multiple occasions. (Audio Recording; Jensen Hughes Report, 8; Atwood Report, 5.)

Ultimately, the fire caused the death of Mark Davis, as well as extensive damage to the Bluffs at Evergreen apartment complex, giving rise to this suit.

## ARGUMENT

A party may use a motion in limine to exclude inadmissible or prejudicial evidence before it is actually introduced at trial. *See, Luce v. United States,* 469 U.S. 38, 40 n. 2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). "[A] motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child and Family Services,* 115 F.3d 436,440 (7th Cir.1997). A motion in limine allows the parties to resolve evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the taint of prejudicial evidence. *Brodit v. Cambra,* 350 F.3d 985, 1004–05 (9th Cir.2003).

Plaintiff anticipates that Defendant will attempt to offer prior statements from Lynn Yevrovich in an effort to shift blame for the fire onto Mark Davis. Almost all of Yevrovich's statements pertaining to the fire are hearsay not subject to any exception with the Rules of Evidence, and many of them contain impermissible speculation. Further, her statements are largely unreliable, as many of them are contradicted by her other statements, can be disproven by other credible evidence, and were not subject to cross examination. Therefore, virtually every statement made by Lynn Yevrovich should be excluded.

### I. IMPROPER SPECULATION

In an effort to offer an alternative theory for the cause of the fire, Defendant will likely attempt to introduce speculative statements from Lynn Yevrovich about whether Mr. Davis was drinking or smoking in his bedroom prior to the fire, Mr. Davis's state of mind, and Yevrovich's

4 – PLAINTIFF'S MOTIONS IN LIMINE

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

theories as to the cause of the fire. Because Yevrovich lacked personal knowledge of any of these topics, this testimony should be excluded.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Witnesses are not "permitted to speculate, guess, or voice suspicions." *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015).

### a. Alternative Theories as to the Cause of the Fire

In several places in the record, Ms. Yevrovich asserts a belief that Mr. Davis caused the fire, either intentionally or accidentally. However, for about 60-90 minutes preceding the fire, she was in a separate room, and the door to Davis's bedroom was closed. (Interview Transcript, 5,11.) Yevrovich states that Davis did not communicate anything to her after he went into his bedroom. (*Id*. at 79-80.) **In her Recorded Interview with EPD and EFD, Yevrovich stated: "I don't know what happened, because I wasn't there when it started."** (Interview Transcript, 65.) It is clear that Ms. Yevrovich did not have personal knowledge as to the cause of the fire, so any statements from her on the subject are impermissible speculation. Fed. R. Evid 602; *Whittemore*, 776 F.3d at 1082.

Based on Yevrovich's multiple and conflicting statements, Defendant may attempt to offer more specific alternative theories as to the cause of the fire, such as the use of cigarettes, lighters, butane, or alcohol by Mr. Davis to start or spread the fire. Not only are these purely speculative, as explained above, but they are directly refuted by credible, admissible evidence. Plaintiff's expert witness Ken Rice analyzed the fire scene, and made the following observations:

> 10. No discarded smoking materials, i.e., cigarette butts, were found in the area of fire origin, or in the debris processed from that area. A single cigarette butt was found under the TV that was on the carpeted floor in the southwest quadrant. There was no corresponding, pre-fire, burning or charring of the carpet near the cigarette butt.

5 – PLAINTIFF'S MOTIONS IN LIMINE

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

11. An unburned, empty package of Complete brand cigarettes was found on the floor near the closet.

12. No ashtrays, butt-cans, etc. were found in the southwest bedroom.

13. A metal can filled with cigarette buts [sic] was found outside on the porch.

14. No flammable liquid containers were found in the area of fire origin. One burned, metal, fluid canister was found on top of the dresser on the west wall. A partially burned butane container was found in a drawer of the same dresser.

15. The area surrounding the bed was scanned with the combustible gas detector and no indications of combustible liquid vapors was found.

16. No evidence of e-cigarette or vaping devices, materials, etc. were found in the southeast bedroom. No other Li-ion battery powered devices were found, or known to be located, in the southeast bedroom.

(Jensen Hughes Report, 12.)

Ms. Yevrovich lacked personal knowledge of the fire's cause, and the specific theories that she speculated about thus far have been disproven by analysis of the fire scene. Accordingly, Defendant should be precluded from offering any statements from Lynn Yevrovich as to the cause of the subject fire.

  **b. Mark Davis's State of Mind**

During her Recorded Interview with EPD and EFD, Ms. Yevrovich offered her opinion as to what Mark Davis's state of mind was prior to and during the fire. Defendant will likely attempt to offer these opinions to imply that Davis may have intentionally set the fire out of malice towards Yevrovich, or because of suicidal ideations. However, as mentioned above, Yevrovich was apart from Mr. Davis for about 60-90 minutes prior to the fire and did not have any communication with him during that time. (Interview Transcript, 5,11, 79-80.)

When Ms. Yevrovich was opining as to Davis's state of mind, she gave the following disclaimer: "That's what I think he might have been thinking." (*Id*. at 74.) In fact, the next two sentences of the interview transcript read: "Or maybe he's standing there staring at it because he's out of his mind, you know. I don't know, because either way he was -- he got really drunk." (*Id*.) Clearly, Yevrovich did not have personal knowledge as to Davis's state of mind at the time of the

6 – PLAINTIFF'S MOTIONS IN LIMINE

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

fire. Accordingly, any of her statements on the matter are inadmissible speculation. Fed. R. Evid. 602.

### c. Mark Davis's Smoking or Drinking in His Bedroom

Defendant will likely attempt to offer statements from Ms. Yevrovich suggesting that Mr. Davis was drinking alcohol or smoking cigarettes while alone in his room. However, as explained above, for the 60-90 minutes before the fire, Yevrovich was in the living room while Davis was in his bedroom, so she did not personally observe him smoking or drinking during that time. Fed. R. Evid. 602. Further, no evidence that Davis had been drinking or smoking was found at the scene of the fire. (Jensen Hughes Report, 12.) Accordingly, any statement from Yevrovich on this subject is improper speculation and should be excluded.

## II. HEARSAY

Ms. Yevrovich passed away in 2016, so she will not be testifying at trial. Accordingly, nearly every statement made by Yevrovich about the fire should be excluded as inadmissible hearsay.

Under the Federal Rules of Evidence, "hearsay" means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). For any of Yevrovich's statements to be admissible, they must qualify as an exclusion from the definition of hearsay (Rule 801) or as an exception to the rule against hearsay (Rules 803 and 804). Fed. R. Evid. 802.

Ms. Yevrovich made documented statements about the subject fire on five occasions: (1) during her 911 call, (2) to Officer Ryan Hanks of the EPD on 12/31/15, (3) in a written statement dated 12/31/15, (4) to Detective Michael Atwood of EPD and Inspector James McCall of EFD on 1/6/16, and (5) to Ken Rice of Jensen Hughes on 1/8/16. Each of these is discussed below.

7 – PLAINTIFF'S MOTIONS IN LIMINE

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

### a. 911 Call

Ms. Yevrovich's 911 call is likely the only statement she made that contains some portions of admissible evidence. Because it was made while the fire was occurring, the call arguably contains some present sense impressions and excited utterances. Fed. R. Evid. 803(1) and (2). Statements such as "There's a mattress on fire" and "We've got a big fire here, please hurry" are likely admissible. (Jensen Hughes Report, 8.) However, certain portions of the 911 call do not meet any of the hearsay exceptions, or are impermissibly speculative, and should be excluded.

At about 0:04, Yevrovich says what sounds like "My housemate just [unintelligible][2] the mattress on fire." (Audio Recording; Jensen Hughes Report, 8.) In her recorded interview with EPD and EFD, Yevrovich explained "I don't know what happened, because I wasn't there when it started." (Interview Transcript, 65.) Yevovrich did not have personal knowledge as to the start of the fire, so this is impermissible speculation that would be unfairly prejudicial, so it should be excluded. Fed. R. Evid. 602, 403.

At about 0:33, Ms. Yevrovich says "He's not listening; he's drunk." (Audio Recording; Jensen Hughes Report, 8.) Yevrovich's opinion about Davis's drunkenness is speculative, as she had been apart from him for about 60-90 minutes, and Davis was likely sleeping immediately prior to that interaction. Fed. R. Evid. 602.

Finally, Yevrovich says at about 1:06, "Oh man, this has just been waiting to happen 'cause he gets drunk all the time, and he does stupid things." (Audio Recording; Jensen Hughes Report, 9.) This statement is not a description of, or an excited reaction to, a contemporary event. Accordingly, it does not meet the definition of a present sense impression or excited utterance, so it is inadmissible hearsay. Fed. R. Evid. 803(1) and (2).

---

[2] Although the meaning can likely be inferred from context, Plaintiff is unable to determine what word Ms. Yevrovich used here.

8 – PLAINTIFF'S MOTIONS IN LIMINE

Plaintiff requests that these three specific statements within the 911 call be excluded. However, if the Court is inclined to admit the entirety of the 911 call, Plaintiff requests that it be allowed to offer impeachment evidence to rebut – and lessen the prejudicial effect of – Yevrovich's speculative statements during the call. To rebut Yevrovich's speculation that Davis lit his mattress on fire, Plaintiff would request to offer the above-referenced statement from Yevrovich's recorded interview with EPD and EFD: "I don't know what happened, because I wasn't there when it started." (Interview Transcript, 65.) And in response to Yevrovich's suggestions that Davis was drunk when the fire started, Plaintiff would request to introduce Yevrovich's statements that, for the 60-90 minutes preceding the fire, Yevrovich was in the living room watching TV, Davis was in his bedroom with the door closed, and they did not communicate during that time. (*Id*. at 5, 11-12, 79.) Without these clarifying statements, the introduction of the 911 call into evidence would be incredibly prejudicial to Plaintiff and would mislead the jury as to Ms. Yevrovich's actual knowledge of the facts. Fed. R. Evid. 403.

      b. **Statement to Officer Hanks**

On the night of the fire, Lynn Yevrovich gave an oral statement to Officer Ryan Hanks of the EPD. (Hanks Report, 2.) While the written report of Officer Hanks could arguably be a Rule 803(6) business record, the statements within the report are themselves hearsay. These statements were not made close enough in time to Yevrovich witnessing the fire to be excited utterances or present sense impressions. Fed. R. Evid. 803(1) and (2). Further, her theories as to the cause of the fire are pure speculation, as discussed above. Fed. R. Evid. 602. Accordingly, Yevrovich's statements to Officer Hanks should be excluded.

      c. **Written Statement**

Lynn Yevrovich provided a written statement to EPD dated 12/31/2015. This statement does not meet the criteria of the business records exception because it was not made by a member or employee of the organization keeping the record (the EPD); it was made by Ms. Yevrovich, a

9 – PLAINTIFF'S MOTIONS IN LIMINE

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

private citizen. Fed. R. Evid. 803(6). Nor does the written statement qualify as "former testimony" under Rule 804(b)(1). Although the written statement was signed under oath, it was not "given as a witness at a trial, hearing, or lawful deposition." Fed. R. Evid. 804(b)(1)(A). Additionally, the statement contains speculation as to the cause of the fire and would be unduly prejudicial. Fed. R. Evid. 602, 403.

This written statement is referenced in reports by Detective Atwood and Officer James Massingale (Atwood Report, 3; Exh. 8 – Massingale Report, 5.) These reports add another layer of hearsay to Yevrovich's statements, and they do not cure the issues mentioned above. As such, these references to Yevrovich's written statement should also be excluded.

### d. Recorded Interview with EPD and EFD

On January 6, 2016, Lynn Yevrovich sat for an interview with Detective Michael Atwood of EPD and Inspector James McCall of EFD, which was recorded via audio-video technology and transcribed. The entirety of this interview should be excluded as hearsay.

The interview does not qualify as a "a declarant witness's prior statement" because Ms. Yevrovich will not be testifying. Fed. R. Evid. 801(d)(1). It is not an "opposing party's statement" because she is not a party to this action. Fed. R. Evid. 801(d)(2).

The interview is not a present sense impression or excited utterance because it occurred several days after the fire. Fed. R. Evid. 803(1), (2). To the extent that Yevrovich discusses her then-existing (during the time of the interview) mental, emotional, or physical condition, it is not relevant to any issues in this case. Fed. R. Evid. 803(3), 401, 402.

Defendant may argue that some of the interview is admissible because it pertains to Mr. Davis's reputation concerning character. Fed. R. Evid. 803(21). However, if Defendant wishes to offer testimony as to a propensity to start fires, or to have accidents while under the influence of alcohol, such evidence is inadmissible under FRE 404: "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance

10 – PLAINTIFF'S MOTIONS IN LIMINE

MACMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

with the character or trait." Any other character evidence pertaining to Mr. Davis, such as his propensity for truthfulness (Fed. R. Evid. 608), is irrelevant to this case because Mr. Davis is not a testifying witness.

The interview does not qualify as "former testimony" because it did not occur at a "trial, hearing, or lawful deposition." Fed. R. Evid. 804(b)(1). Nor does it contain any statements against interest because Ms. Yevrovich does not admit to anything that would have exposed her to civil or criminal liability. Fed. R. Evid. 804(b)(3); (*See* Interview Transcript at 4 ("I'm not guilty, so I'm happy to tell you what happened.")

Accordingly, Lynn Yevrovich's recorded interview should be excluded in its entirety because the statements within it are either inadmissible hearsay or irrelevant to this matter.

### e.  Interview with Ken Rice

On January 8, 2016, Senior Fire Investigator Ken Rice interviewed Lynn Yevrovich in the parking lot of the Bible Baptist Church on Casino Road in Everett, Washington. (Jensen Hughes Report, 5.) Just as the interview with EPD and EFD, this interview does not meet any of the exceptions or exclusions to the hearsay rule. Accordingly, it should be excluded from evidence.

### III.   RELIABILITY AND PREJUDICE

In addition to the hearsay and speculation objections to the admission of Lynn Yevrovich's statements, there is ample reason to doubt the reliability of her testimony. First, there are many discrepancies within her statements. Yevrovich has given contradictory testimony as to whether she smelled (Interview Transcript, 6, 31) or saw smoke first (*Id*. at 7; Hanks Report, 2), whether Mark Davis was asleep (Hanks Report, 2) or standing in the middle of the room when Yevrovich entered it (Interview Transcript, 7), and whether Mark Davis smoked in the apartment (Yevrovich Written Statement; Interview Transcript at 36) or not (Jensen Hughes Report, 5).

11 – PLAINTIFF'S MOTIONS IN LIMINE

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

In addition to contradictions within the statements themselves, there are discrepancies between Yevrovich's statements and other, more credible evidence. Yevrovich stated that Mark Davis refused to leave his bedroom (Yevrovich Written Statement; Jensen Hughes Report, 5; Interview Transcript, 9, 18-19), but the 911 call and the location of Davis's body suggest that he left the apartment with Yevrovich. (Atwood Report, 5.) Yevrovich stated that Mr. Davis made no noise while the fire was going, "except maybe coughing" (Interview Transcript, 79-80), but in the recording of the 911 call, a male voice can be heard in the background on multiple occasions. (Audio Recording; Jensen Hughes Report, 8; Atwood Report, 5.)

Defendant may argue that, despite being hearsay, Yevrovich's statements should be admitted under the residual exception. Fed. R. Evid. 807. Under this exception, hearsay can be admissible if

> **(1)** the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> **(2)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

*Id*.

Based on all the above, it is evident that Yevrovich's statements are not supported by sufficient guarantees of trustworthiness. They contain numerous inaccuracies and inconsistencies that have been noted by the Court, by Detective Atwood, and by Ken Rice. Much of Yevrovich's relevant testimony is purely speculation. And none of her statements were in the form of sworn testimony during which cross examination could be conducted.

The probative value of Lynn Yevrovich's testimony is greatly outweighed by the prejudicial effect it would have and the likelihood that it would mislead the jury. Fed. R. Evid. 403. Accordingly, Yevrovich's statements should not be admitted under the residual exception. Fed. R. Evid. 807.

12 – PLAINTIFF'S MOTIONS IN LIMINE

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

IV. **IMPROPER OPINIONS OF DEFENDANT'S EXPERT NASH JOHNSON**

A. **Testimony and Evidence Regarding Johnson's Opinions on Plaintiff's Recovery of the Cost of Hazardous Materials Abatement Should Be Excluded**

Johnson opines that "all costs for hazardous materials abatement as associated demolition should not be included in the cost of repair as these costs are simply differed [sic] building maintenance costs that are the direct responsibility of the building owner." (Nash Johnson Report p.4.) Johnson asserts that the cost of hazardous materials testing "should not be included in any cost of repair but is rather a cost of doing business as a property/manager owner." And that "the building finishes in place that contained asbestos had well outlived their expected life and that their removal at the time of repairs was necessary work that would have needed to done [sic] without regard for the fire and is a betterment that building ownership has benefited from." (Johnson Report p. 3.) Johnson does not cite any basis for these opinions.[3] He does not identify any construction standard, code, or statute to support his assertion that it would have been necessary to replace these materials if not for the fire loss. He does not provide any basis for his assertion that testing of hazardous materials is a cost of doing business as a property owner. An expert's opinion must be based on sufficient facts or data. Fed. R. Evid. 702(b). Johnson does not have any basis for any of his opinions regarding hazardous materials abatement and they should be excluded.

Additionally, the question of what categories of damages a plaintiff is entitled to is a question of law. Johnson's opinion that Plaintiff is not entitled to an entire category of damages constitutes a legal conclusion, which is outside the scope of what an expert can opine on. "[A]n expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of

---

[3] In his report, Johnson's sentence regarding what specific materials were identified as containing asbestos is incomplete and he does not identify which materials contain asbestos. (Johnson Report p.3.) Johnson should not be allowed to testify regarding those specifically identified materials when that information was not included in his report.

13 – PLAINTIFF'S MOTIONS IN LIMINE

law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir.2004) (citing *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir.2002)).

Johnson's opinion that Plaintiff is not entitled to the cost of hazardous materials abatement because Plaintiff would have had to pay those costs on its own at some point in time even if the fire had not occurred is contrary to Washington law. "[W]here the injury is not permanent and the premises can be restored to their original condition, the usual measure of damage is restoration costs and loss of use." *Pugel v. Monheimer*, 83 Wash. App. 688, 692, 922 P.2d 1377, 1379 (1996). The restoration costs arising out of the fire included hazardous material testing and abatement. Whether Plaintiff would have incurred them at some point is immaterial, the costs were necessary to restore the structure to its former use. Johnson's legal opinions that run contrary to Washington law should be excluded.

Johnson's enumeration of the cost of hazardous abatement is incorrect on its face. Johnson asserts that the cost of "Hazardous Materials Abatement" was $1,302,724. Johnson used the amount from Plaintiff's statement of loss, however the amount is actually the cost for Plaintiff's total demolition and abatement, not just its hazardous materials abatement. (Exh. 9.) Johnson should not be permitted to present this patently false information to a jury.

**B. Testimony and Evidence Regarding Johnson's Opinions on Plaintiff's Recovery of the Cost of Complying with the Code and Current Construction Practices Should Be Excluded**

Johnson Opines that Plaintiff cannot recover the construction costs that were incurred to bring the building in line with the current construction code. This opinion is a legal conclusion that runs contrary to Washington law and should be excluded.

The measure of property damage is the cost of restoration and loss of use. *Pugel v. Monheimer*, 83 Wash. App. 688, 692, 922 P.2d 1377, 1379 (1996). The general purpose of tort damages is to restore the wronged party to the position they would have been in if the wrong had not been

committed. *Rathke v. Roberts*, 33 Wash. 2d 858, 865, 207 P.2d 716, 720 (1949). The relevant question is what costs were necessary to restore the real property to its former use. *DePhelps v. Safeco Ins. Co. of Am.,* 116 Wash. App. 441, 454, 65 P.3d 1234, 1240 (2003). "[B]uilding code upgrades are recoverable as necessary to restore the structure to its former use." *Id*. Plaintiff had to reconstruct the building as a result of the fire and Plaintiff could not reconstruct the building in a way that did not comply with construction codes or current construction practices. Therefore, preventing Plaintiff from recovering the costs of reconstruction that were required to comply with the construction codes does not restore the structure to its former use and does not restore Plaintiff to the position it was in if the fire had not occurred. Johnson's opinion on this matter runs contrary to established Washington law and opining on what categories of damages Plaintiff is entitled to recover constitutes an impermissible legal conclusion from an expert. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir.2004).

Johnson also states without basis that the "reconstruction surely conferred a financial benefit on the building Owner. The building has a higher value than it did because of the reconstruction and upgrades . . ." (Johnson Report p.6.) Johnson does not state any factual basis or support for this opinion. Fed. R. Evid. 702(b). Johnson's opinions and any related testimony on these issues should be excluded.

## CONCLUSION

Virtually every statement made by Lynn Yevrovich about the subject fire is inadmissible hearsay. Additionally, many of her otherwise relevant statements are pure speculation. And based on the totality of the circumstances, her statements are not supported by sufficient guarantees of trustworthiness, so they are not admissible under the residual exception. Therefore, Plaintiff requests that all speculative and hearsay statements made by Lynn Yevrovich, and any reference to

15 – PLAINTIFF'S MOTIONS IN LIMINE

them, be excluded from evidence. This includes the redaction and exclusion of such statements from the 911 call.

In the alternative, and as explained above, if the Court is inclined to admit the entirety of the 911 call into evidence, Plaintiff requests that it be allowed to offer rebuttal evidence to lessen the prejudicial effect of Yevrovich's speculative statements within the 911 call.

Nash Johnson's opinions regarding Plaintiffs recovery of damages related hazardous materials abatement and compliance with construction codes do not have sufficient factual basis, constitute inadmissible legal conclusions by an expert, and run contrary to Washington law. Any testimony related to these conclusions should be excluded.

DATED: September 11, 2023.	MacMILLAN, SCHOLZ, & MARKS, LLC

By: _____
John R. MacMillan, WSB #27912
MacMillan Scholz & Marks, LLC
900 SW Fifth Ave., #1800
Portland, OR 97204
T: (503) 224-2165
F: (503) 224-0348
E: jmacmillan@msmlegal.com
*Of Attorneys for Plaintiff*

16 – PLAINTIFF'S MOTIONS IN LIMINE

## CERTIFICATE OF SERVICE

I certify that on the date below I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Ken Roessler: ken@mixsanders.com
Christopher G. Betke: cbetke@coughlinbetke.com

I further certify that on the below I mailed by U.S. Postal Service a copy of the foregoing document to the following non-CM/ECF participants:

N/A

DATED: September 11, 2023          /s/ *Kobie Keeton*

17 – PLAINTIFF'S MOTIONS IN LIMINE

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165