1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHILADELPHIA INDEMNITY
INSURANCE COMPANY, a Pennsylvania
corporation, as subrogee of DH&G, LLC.,

Plaintiffs,

v.

HEWLETT-PACKARD COMPANY,

Defendants.

Case No. 2:19-cv-00138-TL

DEFENDANT HEWLETT-PACKARD
COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTIONS IN LIMINE

NOTED: September 29, 2023
Oral Argument Requested

**OPPOSITION TO PLAINTIFF'S FIRST, SECOND, AND THIRD MOTIONS IN
LIMINE AS TO THE STATEMENTS OF LYNN YEVROVICH**

**INTRODUCTION**

Plaintiff concedes that the events surrounding the fatal apartment complex fire in this

case are disputed, and Lynn Yevrovich, the only surviving witness to provide any information

on the cause of the fire – in the initial 911 call, in a contemporaneous and sworn statement, and

in a recorded police interview – has since passed away. *Dkt. 63 at 2*. Plaintiff also does not

dispute that Yevrovich's statements, including that Mark Davis had set the fire, are relevant

evidence of the cause of the fire. *See Dkt. 63*. Nevertheless, with its motion to preclude all of

Yevrovich's statements, Plaintiff cynically attempts to leverage Yevrovich's death in order to

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN
LIMINE – 1
Case No. 2:19-cv-00138-TL

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

advance to the fact-finder a falsely sanitized version of the events leading to the fire: a version in which Davis was not drunk that day from 10 a.m. or 11 a.m. onwards, did not smoke cigarettes in his room that day, did not repeatedly yell "fuck you" at Yevrovich after she ended their turbulent relationship, did not want to burn up all Yevrovich's belongings because she was leaving him, and did not set the fire. Even though Plaintiff's own fire expert admits that Davis had the means and opportunity to start the fire, and that Yevrovich's statements identified a motive for Davis to start the fire, *Dkt. 50-2 at 13*, Plaintiff seeks to exclude these statements from the fact-finder's consideration. Indeed, Plaintiff seeks exclusion of these statements notwithstanding that the Court has previously ruled that the determination of the credibility of these statements must be reserved for the finder of fact. *Dkt. 59 at 23*. Yevrovich's out-of-court statements are not excluded by the rule against hearsay under the Federal Rules of Evidence, and they are unquestionably relevant to the "heavily disputed" issue of the cause of the December 31 fire. *See id*. at 25. The motion in limine must be denied.

## FACTUAL BACKGROUND

As recited by the Court, the undisputed facts in this case concerning a fatal New Year's Eve 2015 apartment complex fire in Everett include that the fire originated in an apartment occupied by Lynn Yevrovich and Mark Davis, who were in a long-term relationship that was at times romantic in nature. *Dkt. 59 at 2-3*. The day of the fire, Davis "appeared to be intoxicated by at least 10:00 or 11:00 a.m." Later that evening, "Ms. Yevrovich told Mr. Davis that she wanted to end their relationship, see other people, and move out of the apartment as soon as she could find employment. Mr. Davis reacted angrily and yelled "Fuck you!" repeatedly before demanding that Ms. Yevrovich leave his room." *Id*. at 3. "Approximately one to two hours later, Ms. Yevrovich was in the living room watching TV when she smelled non-cigarette smoke

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN
LIMINE – 2
Case No. 2:19-cv-00138-TL

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

coming out of Mr. Davis's room, where Mr. Davis was located. She rushed over to Mr. Davis's room and opened the door, where she saw Mr. Davis and a fire on his mattress." *Id.* Plaintiff's expert fire investigator Ken Rice agreed that Davis "had the means and the opportunity" to have started the fire, but Rice "just couldn't come up with a clear motive as to why he would want to destroy his own — little of what he had but let alone his personal belongings." *Dkt. 50-2* at 13. However, Rice agreed that when Yevrovich talked to the police, she was "pretty clear" that she "believed he intentionally set this fire." *Id.*

Concerning her statements to the police, "Yevrovich was interviewed several times about the fire":  [1] "she was interviewed at the scene by Officer Ryan Hanks of the Everett Police Department ; [2] "Yevrovich then prepared a written statement for EPD on the same day"; [3] On January 6, 2016, Everett Police and Departments "conducted a video-recorded interview of Ms. Yevrovich regarding the fire"; and [4] plaintiff's expert Rice "interviewed Ms. Yevrovich on January 8, 2016." *Dkt. 59* at 4 (citations omitted). Yevrovich is now deceased. *Id.*

## ARGUMENT

### I. Lynn Yevrovich's statements are not excluded by the rule against hearsay

*a. Yevrovich's 911 call at the time of fire is admissible as a non testimonial statement, as a present sense impression, and as an excited utterance*

As an initial matter, it is beyond cavil that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). In evaluating the "circumstances objectively indicating that the primary purpose of the interrogation" the Court considers (1) if the emergency was ongoing, and (2) the formality of the encounter and the questions asked. *Michigan v. Bryant*, 131 S.Ct. 1143, 1162 (2011). Here, Yevrovich provided information to the 911 dispatcher on the

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE – 3
Case No. 2:19-cv-00138-TL

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

current status of the fire; "[s]he was not describing an event in the past but rather seeking help to alleviate an ongoing emergency." *United States v. Gomez*, 472 F. App'x 601, 603 (9th Cir. 2012); *see Dkt. 64-3* at 9 (Operator: "Hello, what's going on there?" Yevrovich: "There's a mattress on fire. My housemate just [set] the mattress on fire. We've got a big fire here please hurry. Hurry, hurry." Operator: "OK, and is it out?" Yevrovich: "It's 2 West Casino Road, Apartment E101. Please hurry." Operator: "OK and is the box mattress still on fire?" Yevrovich: "Yes it's on fire! I don't know what to do."). *Id.*

Equally, "the dispatcher's questions were aimed at soliciting information on [Yevrovich's] condition, providing directions on how to help her, and identifying the name and possible location" of other residents. *Gomez, supra* at 603; *see Dkt. 64-3* at 9 (Operator: "OK, I need you to get out of the house. Get out of the house."; Operator: "Is there a fire alarm that you can pull outside?"). Here, Yevrovich's statements to the 911 dispatcher were to enable police assistance to meet an ongoing emergency. "Thus, the admission of these nontestimonial statements [is] proper." *Gomez, supra* at 603.

The 911 call is further admissible under exceptions to the hearsay rule. A 911 call recording can be admitted into evidence as either a public record, Fed. R. Evid. 803(8), or a business record, Fed. R. Evid. 803(6). However, a recorded statement within the 911 call must satisfy a separate hearsay exception. *See* Fed. R. Evid. 805. Here, the dispatch recorded statement by Yevrovich satisfies separate hearsay exceptions, as plaintiff concedes: "Because it was made while the fire was occurring, the call arguably contains some present sense impressions and excited utterances." *Dkt. 63* at 8; *see* F.R.E. 803(1), (2).[1]

---

[1] In a further concession underscoring the cynical nature of its requested relief, plaintiff proffers for the purposes of impeachment the very statements that it elsewhere in its motion seeks to preclude, including portions of Yevrovich's recorded interview with the Everett Police Department. *Dkt. 63* at 9; *see infra* § I(c).

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE – 4
Case No. 2:19-cv-00138-TL

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

Present sense impressions are not excluded by the hearsay rule. Fed. R. Evid. 803(1). A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." *Id*. Here, Yevrovich described the fire, and her and Davis' actions in the 911 call, "as she witnessed them." *United States v. Presley*, 2008 U.S. Dist. LEXIS 7841, at *10-12 (W.D. Wash. Jan. 16, 2008) (Settle, J.) (admitting 911 call under F.R.E. 803(1)); *see Dkt. 64-3* at 9 ("We've got a big fire here please hurry"; "He's not listening, he's drunk."; "We can't, we can't even see"; "Oh my God, the window just burst out."). Because Yevrovich described what Davis was doing "here and right now" the statements describe what "he was doing at the time and in her presence and therefore fall within the present sense impression exception." *Presly, supra* at *10.

Excited utterances are not excluded by the hearsay rule. Fed. R. Evid. 803(2). An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* The district court must determine that the declarant was "so excited or distraught" at the time of the statement "that he did not reflect (or have an opportunity to reflect) on what he was saying." *United States v. McLennan*, 563 F.2d 943, 948 (9th Cir. 1977). Given the exigent nature of most 911 calls, "[u]nsurprisingly, 911 calls that would otherwise be inadmissible hearsay have often been admitted" under Rule 803(2). *See Navarette v. Cal.*, 572 U.S. 393, 400 (2014). Here, Yevrovich made the 911 call in obvious distress. *Dkt. 64-3* at 9-10 ("There's a mattress on fire. My housemate just [set] the mattress on fire. We've got a big fire here please hurry. Hurry, hurry." "Please hurry." "Yes it's on fire! I don't know what to do."; "Please sent somebody" "Oh my God, the window just burst out."). It is therefore "clear from the recording that [Yevrovich] was in a state of anxiety and distress as the events were transpiring in her home and was seeking the intervention of law enforcement on

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

an emergency basis," so her 911 call is admissible as an excited utterance. *See Presley, supra* at

*12 (admitting 911 call under F.R.E. 803(2)); *see United States v. Bryan,* 2021 U.S. Dist. LEXIS

107956, at *3-4 (D. Nev. June 9, 2021) (Du, C.J.) (same); *see also United States v. Zaragoza*,

349 F. App'x 220, 220-21 (9th Cir. 2009) *citing United States v. Hills, Jr.*, 455 F.2d 504, 505

(9th Cir. 1972) (admission of 911 dispatch testimony under an "excited utterance" hearsay

exception was a "correct application of a well-known exception to the hearsay exclusionary

rule"). The motion in limine must be accordingly denied.

   b. *Yevrovich's statements immediately after the fire are admissible as an excited*
      *utterance, and under the residual hearsay exception*

   Everett Police Department Officer Ryan Hanks was the second emergency responder at

the scene of the fire on New Year's Eve 2015. *Dkt. 64-2* at 3. The Everett Fire Department

arrived shortly thereafter, and Officer Hanks assisted them with extracting some of the trapped

residents from the third floor of the building. *Id.* While discussing with the just-evacuated

residents their injuries, "a female walked up to [Officer Hanks] and stated, 'I know my roommate

started this fire." *Dkt. 64-2* at 3. Officer Hanks reported that he "identified her later as Lynn

Yevrovich." *Id.* Plaintiff concedes that Officer Hanks' report is likely admissible as a business

record, *Dkt. 63* at 9 ("the written report of Officer Hanks could arguably be a Rule 803(6)

business record"), in addition to its admissibility as a public record, F.R.E. 803(8). Plaintiff's

sole objection–stated without reference to the record–to the admission of Yevrovich's statement

as an excited utterance or present sense impression is that "[t]hese statements were not made

close enough in time to Yevrovich witnessing the fire." *Dkt. 63* at 9. However, Officer Hanks'

recitation of the facts establishes that Yevrovich approached him immediately after fleeing the

building and while the fire was still uncontrolled–as the second officer on the scene of the fire,

after "extracting disabled people from the D building" and "while talking with residents about

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

1   injuries," he was approached by Yevrovich who immediately identified Davis as the cause of the

2   fire. *Dkt. 64-2* at 3; *see also Dkt. 64-7* at 3 (fire still uncontrolled over 4 hours after 911 call).

3        Further, while the record supports close temporal proximity, "Rather than focusing solely

4   on the time a statement was made, courts must consider other factors, including the age of the

5   declarant, the characteristics of the event, and the subject matter of the statements." *United States*

6   *v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995). Here, Yevrovich had just fled her burning

7   apartment and was running to alert her neighbors to the growing fire. The circumstances of the

8   event–the fire that burst out her window and accelerated through the building, *Dkt. 64-1* at 11–

9   were extreme, and the subject matter of her statement was precisely that fire. Thus, statements

10  made "to law enforcement when they arrived on the scene" are "admissible because they fall

11  under the excited utterance exception." *Bryan, supra* at  *3 (statement to first officers on scene

12  admissible). Equally, when Officer Hanks then directed Officer Johnson to collect a written

13  statement from Yevrovich, the resulting written statement was written out while the fire was

14  ongoing and while Yevrovich was evidently distraught. *See Dkt. 64-6*[2]. The statements are

15  accordingly admissible excited utterances under F.R.E. 803(2). *See Rivera, supra* at 1296. The

16  motion in limine must be denied.

17        Further, if somehow the statements were not admissible as excited utterances, the

18  statements are admissible under the residual hearsay exception under F.R.E. 807. Under Rule

19  807, a statement is not excluded by the rule against hearsay if "(1) the statement is supported by

20  sufficient guarantees of trustworthiness – after considering the totality of circumstances under

21  which it was made and evidence, if any, corroborating the statement; and (2) it is more probative

22  on the point for which it is offered than any other evidence that the proponent can obtain through

23

24

---

[2] Plaintiff has represented that the audio file of the 911 call will be provided to the Court.

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN
LIMINE – 7
Case No. 2:19-cv-00138-TL

reasonable efforts." Fed. R. Evid. 807. Yevrovich's statements possessed guarantees of trustworthiness because both were made voluntarily to law enforcement based on personal knowledge; the written statement, which repeated the substance of the oral statement to Officer Hanks and stated "Mark lit the mattress on fire," was made under oath and penalty of perjury, *see United States v. Sanchez-Lima*, 161 F.3d 545, 547-48 (9th Cir. 1998). *Dkt. 64-5* at 2 (statement under penalty of perjury). Here, the statements are offered as evidence of material facts about the cause of the fire, including that Yevrovich stated it was caused by Davis; Yevrovich's statements are – as plaintiff concedes, *Dkt. 63* at 2 – the only statements by any witness to the origin of the fire that is the subject of this lawsuit and are therefore more probative on this point than any other evidence in the case that can be procured; and the finder of fact and thereby the interests of justice will be served by admission of the statements into evidence. *See Santa Barbara Capital Mgmt. v. Neilson (In re Slatkin),* 525 F.3d 805, 812 (9th Cir. 2008). The motion in limine must therefore be denied as the statements are admissible under the residual exception.

   c.  *Yevrovich's video-recorded police interview is admissible under the residual hearsay exception, the reputation concerning character evidence exception, and as non-hearsay*

Even more trustworthy than a sworn, contemporaneous statement to law enforcement is a video recorded statement like the one Yevrovich gave to the Everett Police and Fire Departments six days after the fire. The statements possessed guarantees of trustworthiness because: (1) Yevrovich "made the statements voluntarily", as plaintiff concedes, *see Dkt. 63* at 11; (2) she "based the statements on facts within their own personal knowledge"; and most critically, (3) she "had [her] testimony preserved on videotape which would allow the jurors an opportunity to view their demeanor." *See Sanchez-Lima, supra* at *547.* "Testimony preserved on

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

1   videotape, unlike written notes taken by an officer, shows the demeanor of the witness, allowing

2   a jury to use visual cues to assess credibility." *United States v. Leal-Del Carmen*, 697 F.3d 964,

3   974 (9th Cir. 2012); *see also Harrington v. City of Redwood City,* 7 F. App'x 740, 742–43 (9th

4   Cir. 2001) (recorded police interview admitted where declarant "had critically important

5   eyewitness testimony, was the only person without a strong interest in the outcome, and was

6   dead"). Indeed, it is these indicia of trustworthiness, including the availability of visual and audio

7   cues, that will enable the fact-finder to evaluate credibility, including the credibility of

8   Yevrovich's statements in view of any inconsistencies among them. *See Dkt. 63* at 12.[3] This was

9   adverted to by the Court in the ruling on summary judgment. *Dkt. 59* at 23 (according weight to

10  Yevrovich statements "a question of credibility best reserved for the fact-finder").

11         Here, as with Yevrovich's sworn written statement, her video recorded police interview

12  is offered as evidence of material facts about the cause of the fire, including that Yevrovich stated

13  it was caused by Davis; Yevrovich's statements are again concededly the only statements by any

14  material witness to the fire and are therefore more probative on this point than any other evidence

15  in the case that can possibly be procured; and the finder of fact and thereby the interests of justice

16  will be served by admission of the statements into evidence. *See Thompson v. Prop. & Cas. Ins.*

17  *Co.,* 2015 U.S. Dist. LEXIS 168073, at *13-20 (D. Ariz. Dec. 16, 2015) (Teilborg, J.) (where

18  the only individual who could contest plaintiff's allegation was unavailable due to death, "the

19  only means [defendant] has to put evidence before the trier of fact is to proffer a transcript of the

20  statements").

---

[3] It bears emphasis that unlike Yevrovich's statements, contemporaneous and sworn, to law enforcement at the time of the fire, and her subsequent video-recorded police interview, Yevrovich's statements to plaintiff's' expert Ken Rice bear none of these indicia of trustworthiness. Plaintiff concedes the Rice interview is inadmissible hearsay. *Dkt. 63* at 11.

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN
LIMINE – 9
Case No. 2:19-cv-00138-TL

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

1      Indeed, concerning the probative value of the evidence, Yevrovich's statement that Davis

2  had a destructive motive to set the fire, is "more probative on these issues than any other

3  evidence" the parties could procure. "In fact, it is precisely because such direct proof of [] intent

4  is rarely available" that it must not be excluded here. *Santa Barbara Capital Mgmt., supra* at

5  812 (admitting statement under F.R.E. 807). After all, Plaintiff's expert fire investigator Rice

6  agreed that Davis "had the means and the opportunity" to have started the fire, but Rice "just

7  couldn't come up with a clear motive as to why he would want to destroy his own — little of

8  what he had but let alone his personal belongings." *Dkt. 50-2* at 13.

9      However, Rice agreed that when Yevrovich she talked to the police, she was "pretty

10 clear" that she "believed he intentionally set this fire." *Id.* Yevrovich's statements about Davis'

11 motives are therefore consistent with the expert record evidence in this matter. *See Dkt. 50-3* at

12 20 (Report of Jeffrey Colwell P.E., Phd, ("Arson motivated by revenge, spite and jealousy

13 accounts for a high percentage of the number of intentionally set fires occurring in the US.  Those

14 who commit such arson include "jilted lovers, feuding neighbors, disgruntled employees,

15 quarreling spouses …"). Indeed, Plaintiff's expert Rice further agreed that KIRK'S FIRE

16 INVESTIGATION (Icove et al., eds., 8th ed. 2017) was learned treatise – and therefore admissible

17 under F.R.E. 803(18)–in respect of fire investigation – *see Ex. 2 to Betke Affidavit* at 17-18, and

18 it provides: "There are numerous case examples of revenge-motivated arsons by men after

19 disputes with their wives, girlfriends, or former girlfriends." KIRK'S, *supra* at 674-75 (collecting

20 cases); *see also id.* at Fig. 11-4 (depicting "a revenge-motivated fire set on a bed, which is

21 characteristic of a focused target having personal significance."). Thus, the Yevrovich video-

22 recorded interview has further indicia of trustworthiness, and is highly probative.  "*Sanchez-*

23 *Lima* controls; the evidence was admissible." *Leal-Del Carmen*, *supra* at 974 (F.R.E. 807).

24

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

1    Yevrovich's video-recorded police interview statements concerning plaintiff's motion must be

2    admitted under the residual hearsay exception. The motion in limine must therefore be denied.

3            Plaintiff further does not contest and apparently concedes that the interview is admissible

4    under the reputation concerning character exception to the hearsay rule insofar the interview

5    "pertains to Mr. Davis's reputation concerning character" – plaintiff helpfully suggests the

6    testimony concerning Davis' "propensity to start fires, or to have accidents while under the

7    influence of alcohol" – but argues instead that such evidence is nevertheless inadmissible under

8    the character evidence rule, F.R.E. 404(a). *Dkt. 63* at 10-11, citing F.R.E. 803(21). However, the

9    relevant analysis of Yevrovich's video-recorded police interview is under F.R.E. 404(b), which

10   concerns other acts. Yevrovich's statements highlighted by plaintiff that Davis was often

11   intoxicated and getting into accidents, for instance, is admissible evidence of Davis' opportunity

12   to have caused the fire. *See* F.R.E. 404(b)((2).

13           Equally, Yevrovich's statements that Davis' behavior towards her when drinking,

14   including abusive language, hallucinations, and paranoia that required police intervention, *Dkt.*

15   *64-1* at 67-70, gave her the impression "that he was trying to drink himself to death and he just

16   wanted somebody to baby him while he did that," *Dkt. 64-1* at 54-55 is admissible evidence of

17   Davis' motive to have caused the fire. *See* F.R.E. 404(b)((2). That is, Davis was angry when

18   Yevrovich stated she was ending the relationship. Davis' last words to her were "Fuck you"

19   because she was no longer to be his "caregiver", *Dkt. 64-1* at 11: she paid the rent when he failed

20   to, *id*. at 51, she arranged for his Meals on Wheels, *id.* at 26-7, she cleaned up the messes he

21   made, *id.* at 11, she stopped the accidents he started, *id.* at 50. Davis' other acts, as set forth by

22   Yevrovich in her video-recorded police interview, paint a vivid picture of Davis at the moment

23   of their breakup on New Year's Eve 2015 – repeating a long pattern of recriminations, angry,

24

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN
LIMINE – 11
Case No. 2:19-cv-00138-TL

1    intoxicated, and having lost everything.

2           That other acts of domestic incidents constitute admissible evidence is well

3    established. "[E]vidence of a prior incident involving the same victim has probative value in

4    disproving claims that the defendant lacked intent." *United States v. Hinton*, 31 F.3d 817, 819

5    (9th Cir. 1994), *citing United States v. Lewis,* 837 F.2d 415, 419 (9th Cir. 1988); *see also United*

6    *States v. Berckmann,* 971 F.3d 999, 1002 (9th Cir. 2020) ("Other acts of domestic violence

7    involving the same victim are textbook examples of evidence admissible under Rule 404(b), and

8    courts have permitted this evidence under a variety of theories. Some have explained that

9    additional assaults are admissible as a critical part of the story that clarifies the motive behind

10   the charged crimes."). Here, Davis had a documented history of domestic incidents with

11   Yevrovich confirmed personally by Detective Atwood based on his investigation. *Dkt. 64-97* at

12   4. Her testimony concerning his prior acts towards her in their tumultuous relationship are

13   "introduced to help the jury understand the relationship between the defendant and a particular

14   victim", not merely to illustrate Davis' propensities but as indicative of the motive that plaintiff's

15   expert Rice feigned an ability to identify. *Berckmann, supra* at 1002. The Yevrovich video-

16   recorded police interview is therefore admissible as reputation of character evidence. The motion

17   in limine must be denied.

18          Finally, the Yevrovich video-recorded police interview is also admissible as non-hearsay,

19   wherein it is not offered for the truth of the matter asserted therein. F.R.E. 801(c)(2). Specifically,

20   the manner in which the interviewers proceeded, and the questions that they interposed to the

21   deceased declarant, establish that the Everett Policy Department and Everett Fire Department

22   had reason to suspect and investigate Davis as a potential cause of the fire. *See Dkt. 64-1* at 74.

23   And, indeed, they ultimately were unable to rule out in their report Davis setting the fire, either

24

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN
LIMINE – 12
Case No. 2:19-cv-00138-TL

intentionally or negligently. *Dkt. 64-7* at 7 (closing case as "insufficient").  Pertinent here is the rule that statements introduced to show the effect on the listener are not inadmissible hearsay. *See United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991). The Everett Police Department and Fire Department interviewed Yevrovich with video-recording, and based on Yevrovich's answers, they were unable to rule out Davis having started the fire. That the Police and Fire Departments had reason to suspect and investigate Davis going into the interview, and that they were unable to rule him out as causing the fire thereafter, establishes the material fact that Davis was concluded by other investigators of this fire to be a potential cause. F.R.E. 401. Because the Yevrovich video-recorded police interview is also non-hearsay, the motion in limine must be denied.

### II. Lynn Yevrovich's statements are relevant and admissible

Having demonstrated that Yevrovich's statements are not excluded by the rule against hearsay, *supra* § I(a)–(iv), and noted as did the Court here that the weighing of credibility is for the finder of fact, *see Dkt. 59* at 23–25, the plaintiff's remaining objections concerning the relevance and admissibility of the Yevrovich statements are easily dispatched.

First, the plaintiff's insistence that the Yevrovich statements are inadmissible because they include statements of opinion is unavailing in view of the law. Indeed, the plaintiff's cited authority militates in favor of the admission of Yevrovich statement. *Dkt. 63* at 5. In *United States vs. Whittemore,* the Ninth Circuit Court of Appeals did note that witnesses are "not permitted to speculate, guess, or voice, suspicions," but, in the very next sentence of the opinion omitted by plaintiff, the Court stated:" however, personal knowledge includes opinions and inferences, grounded and observation and experience. Lay witnesses may testify about inferences pursuant to rule 701." *United States v. Whittemore*, 776 F.3d 1074, 1082-83 (9th Cir.

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE – 13
Case No. 2:19-cv-00138-TL

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

2015). Rule 701 provides non-expert opinion testimony is limited to that "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." F.R.E. 701.

Here, Plaintiff does not argue–and cannot argue–that Yevrovich's statements are not rationally based on her perception, or that they are not helpful to understanding her testimony concerning the cause of the fire, or that they constitute specialized knowledge within the scope of Rule 702. Instead, Plaintiff repeats the incantation that because Yevrovich did not observe the moment of ignition, she is "speculating" as to the cause of the fire. *Dkt. 63* at 5. Among other things, Yevrovich stated in her sworn statement and her video-recorded interview that Davis smoked in his room that day after fighting with her. *Dkt. 64-1* at 36, 51 ("I smelled some cigarette smoke earlier").  Yevrovich's opinion that the blaze she observed in his room resulted from him smoking while intoxicated on a flammable mattress is rationally based on her perception and obviously helpful to understanding her statements about the cause of the fire.

Plaintiff continues with the strained argument that the theory of ignition by cigarette is somehow foreclosed by the testimony of its expert, and thereby Yevrovich's statements concerning the same, but this is at variance with the record of this case. *Dkt. 63* at 5-6. Plaintiff's expert concluded that even though there was a discarded, fully burned cigarette butt found in Davis' bedroom, because it was not in the area of the fire origin it could not have started the fire. *See id*. (depicting burned cigarette in Davis' bedroom). Of course, Rice later admitted in deposition that the cigarette could have been displaced by fire suppression and been in the area of the fire origin at the time. *Dkt. 50-2* at 10. Rice's credibility is obviously a matter for the fact finder, which will require the Yevrovich statement to make a credibility assessment; the Court

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE – 14
Case No. 2:19-cv-00138-TL

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

has indicated as much already. "Rice explained that he did not give significant weight to the cigarette butt in his analysis because it had been found in an unburned area of the room (under the TV and across the room from the mattress). It does not matter if the Court agrees with Defendant. Whether Mr. Rice's explanation is credible is a question for the jury." *Dkt. 59* at 23.

Plaintiff similarly argues that [1] even though Yevrovich lived with Davis for five years, which were marked with a pattern of hoarding alcohol in his room and on his person, and, in the last three years, smoking in his room during the increasingly fractious disputes between them concerning Davis' drinking and behavior, *Dkt. 64-1* at 21, 28-9, 53; [2] even though Yevrovich stated she observed Davis to be drunk and reeking of alcohol by 11 a.m, and smelled smoke from his room that day, *id. a*t 21; and, [3] even though Plaintiff's own expert Rice confirms that Davis was "intoxicated most days, out in the parking lot," *Ex. 2 to Betke Affidavit* at 50-51, Yevrovich's opinion that Davis was in a destructive frame of mind, smoking and drinking in his room right after they broke up, is "improper speculation." This argument is unsupported. There is no question that Yevrovich's opinion concerning Davis' smoking and drinking, and his revengeful frame of mind, is rationally based on Yevrovich's perception and is helpful to determining a fact in issue–the cause of the fire.

Plaintiff does not articulate any prejudice it would suffer by the admission of Yevrovich's testimony. *Dkt. 63* at 19. Plaintiff argues that Yevrovich is not credible, but never articulates why the fact-finder cannot evaluate her statements for credibility. *Id.* Equally, Plaintiff claims that Yevrovich's statements would mislead the jury, but never articulates why the fact finder cannot reasonably adjudicate the competing evidence concerning the circumstances of this fire. Plaintiff purports to identify inconsistencies in the statements that are not so inconsistent, but never explains why the fact finder cannot resolve them. For instance, Plaintiff notes that to Rice,

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

1    "Yevrovich stated that Davis would not leave" and in her sworn statement under oath she stated

2    she "yelled at Mark Davis to get out but he wouldn't go." *Dkt. 63* at 3. That Davis "would not

3    leave" and "would not go" are not inconsistent–and Plaintiff never explains why the fact-finder

4    is incompetent to resolve the differences, if any.

5            For the foregoing reasons, the motion in limine should be denied.

6

7    **OPPOSITION TO PLAINTIFF'S FOURTH MOTION IN LIMINE REGARDING
     "IMPROPER OPINIONS" OF DEFENDANT'S EXPERT NASH JOHNSON**

8            Plaintiff's motion to exclude portions of Nash Johnson's opinions should be rejected as an

9    untimely *Daubert* motion disguised as a motion in limine. Pursuant to Section III F of the Court's

10   Standing Order For All Civil Cases:

11           Daubert motions…must be filed by the date dispositive motions are due in
             accordance with the Court's trial scheduling order. Daubert issues may not
12           be presented in motions in limine.

13   *See also* Local Rule 16(b)(4) ("Unless otherwise ordered by the court, parties shall file any

14   motion to exclude expert testimony for failure to satisfy *Daubert v. Merrell Dow*

15   *Pharmaceuticals, Inc*. and its progeny not later than the deadline to file dispositive motions.").

16   The deadline for filing dispositive motions was May 30, 2023. *Dkt. 44.* On September 11, 2023

17   – more than three months late – Plaintiff filed a motion in limine challenging Johnson's opinions

18   as lacking "sufficient facts and data" and "factual basis or support" in violation of Fed.R.Evid.

19   702. *Dkt. 63* at 13-15. These are clearly *Daubert* challenges and thus are untimely per this Court's

20   rules and should not be considered.

21           In the event the Court opts to consider Plaintiff's untimely motion, there is no merit to

22   Plaintiff's criticisms. Per his report, Johnson is expected to testify that hazardous materials

23   abatement should be excluded because it is work that should have been done years earlier in

24

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN
LIMINE – 16
Case No. 2:19-cv-00138-TL

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

connection with building maintenance that Plaintiff's insured failed to do. Plaintiff contends that this testimony should be excluded because it (1) constitutes an improper legal opinion and (2) lacks citations to any standards, facts, or data. Both arguments lack merit.

First, it is well established that, "[t]he purpose of awarding damages in cases involving injury to real property is to return the injured party as nearly as possible to the position he would have been in had the wrongful act not occurred." *Thompson v. King Feed & Nutrition Serv.,* 153 Wn.2d 447, 459 (2005), quoting 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 5.2, at 126 (2d ed. 2000). Had the subject fire not occurred, Plaintiff's insured would have had an apartment building that was not up to current codes and had asbestos-containing finishes beyond their life expectancy. HP is aware of no case law supporting the contention that the Plaintiff is entitled to recover for overdue maintenance work, and Plaintiff cites none.

Second, Plaintiff is incorrect when it asserts that Johnson's opinions are not backed up by standards, facts, or data. Johnson has worked in the construction industry for nearly 30 years, including 12 in commercial construction, and 10 in multi-family residential construction, re-construction, rehabilitation and construction defect repair. *Betke Affidavit, Ex. 1.* He earned a degree in construction management from the University of Washington. *Id.* He has experience in cost estimating and involvement in over 250 construction projects in the Pacific Northwest. Johnson's opinions regarding the measure of damages is thus based on his education, training, and experience in the construction field and the application of his knowledge to the facts of this case, in accordance with Rule 702. *Id.* To the extent Plaintiff challenges the bases of Johnson's opinions, those are grounds for cross-examination, not exclusion.

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

1       Furthermore, Plaintiff omits the information relied upon by Johnson. Specifically, Plaintiff

2 did not provide the Court with **<u>any</u>** of Johnson's expert disclosure. Johnson's disclosure includes

3 his written report, C.V., and documents produced by Plaintiff, reconstruction cost spreadsheets,

4 envelope upgrades, contractors' invoices, and other relevant damages records on which Johnson

5 based his analysis and opinions. A complete copy of Johnson's Disclosure is attached as Exhibit

6 1 to the Declaration of Christopher G. Betke, submitted herewith.[4]

7       Plaintiff claims that Johnson "does not provide any basis for his assertion that testing of

8 hazardous materials is a cost of doing business as a property owner." *Dkt. 63* at 13. Johnson's

9 report states that the building's finishes containing asbestos were beyond their life expectancy

10 and should have been replaced and remediated years before the fire. This is based on his

11 knowledge of construction, as gained through his education and professional experience. Johnson

12 will testify at trial about his industry experience navigating the various regulations and

13 requirements that obligate residential building owners to know whether they have any hazardous

14 materials in their structures and how to properly abate such materials. He will testify that asbestos

15 abatement must be done by "trained workers who are employed by State licensed contractors,"

16 and "require disposal in a specific manner that is outlined by the State and Federal government."

17 He will testify as to his review of the discovery materials in this case to testify to the factual basis

18 for his opinions on asbestos abatement and demolition costs that Plaintiff includes among its

19 alleged damages. HP further notes that Plaintiff opted to depose all of HP's experts <u>except</u>

20 Johnson. Plaintiff could have sought an elaboration by Johnson at a deposition on the issues

21

22

23    [4] This includes Johnson's report with two updates. Apparently due to a word processing error a portion of
a sentence (on page 3) was omitted. That error is corrected in the attached report. In addition, Johnson

24 includes a more detailed citation to a Bates numbered document (on page 4).

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

1    complained of in the motion in limine but chose not to. The fact that Plaintiff chose not to depose

2    Johnson and ask pertinent questions is not a basis for excluding his testimony at trial.

3          Similarly, Plaintiff seeks to prohibit Johnson from testifying that the costs of code

4    compliance should be excluded from the measure of damages. Again, if HP is found to be at

5    fault, the measure of damages here is the amount it would take to return Plaintiff to the position

6    it would have been but for the fire. *Thompson,* 153 Wn.2d at 459 (2005). Plaintiff improperly

7    relies on *DePhelps v. Safeco Ins. Co. of America,* 116, Wash.App. 441 (2003), for the contention

8    that code upgrades are recoverable. However, *DePhelps* is irrelevant. That case dealt with

9    whether code compliance damages were covered under terms the plaintiff's <u>insurance policy</u> (*id.*

10   at 449-50), not whether such damages are recoverable in a subrogation action like this one.

11         Similarly, Plaintiff improperly relies on *Pugel v. Monheimer*, 83 Wn. App. 688 (1996), for

12   the proposition that it is entitled to recovery for "restoration damages and loss of use," which,

13   according to Plaintiff, includes code upgrades and hazardous material abatement. *See Dkt. 63* at

14   14. *Pugel* involved damage to the structural integrity of a building caused by a neighbor's

15   excavation work. 83 Wn. App. at 690. The plaintiff in that case was ordered by the city to fix the

16   property because of its potential dangerousness. *Id*. There is nothing in *Pugel* supporting the

17   argument that the Plaintiff here can recover for <u>overdue</u> repairs and code compliance. To the

18   contrary, as the *Pugel* court correctly noted, "In making any compensatory award, the court

19   should use a measure of damage that makes the injured party as whole as possible without

20   conferring a windfall." *Id., citing Massey v. Tube Art Display, Inc.,* 15 Wn. App. 782, 791, 551

21   P.2d 1387 (1976). Yet, Plaintiff is seeking a windfall award of free repairs and asbestos

22   remediation that its insured should have taken care of years earlier. Such an award is not

23   contemplated in *Pugel* or in any other case that HP is aware of, and Plaintiff cites none.

24

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

MIX SANDERS THOMPSON, PLLC


*s/Kenneth M. Roessler*
Kenneth M. Roessler, WSBA No. 31886
MIX SANDERS THOMPSON, PLLC
1601 Fifth Avenue, Ste. 1800
Seattle, WA  98101
Tel:    206-678-1000
Fax:    888-521-5980
Email: ken@mixsanders.com
Attorney for Defendant HP, Inc.



*s/Christopher G. Betke*
Christopher G. Betke, pro hac vice
Coughlin Betke LLP
175 Federal St.
Boston, MA 02110
(617) 988-8050
cbetke@coughlinbetke.com


     I, Christopher G. Betke, certify that the above memorandum contains 6,227 words (exclusive of the caption, signature block, and certificate of service), in compliance with the Local Civil Rules.

*/s/ Christopher G. Betke*
Christopher G. Betke,
pro hac vice

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN
LIMINE – 20
Case No. 2:19-cv-00138-TL

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980

1

## CERTIFICATE OF SERVICE

2

I certify that on the date below I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

3

4

John R. MacMillan: jmacmillan@msmlegal.com
Kenneth Roessler: ken@mixsanders.com
Christopher Betke: cbetke@coughlinbetke.com

5

6

I further certify that on the below I mailed by U.S. Postal Service a copy of the foregoing document to the following non-CM/ECF participants:

7

N/A

8

9

    DATED:  _9/25/23_____        *s/Kalli Lehmann, Legal Assistant_____*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DEFENDANT HP'S OPPOSITION TO PLAINTIFF'S MOTIONS IN
LIMINE – 21
Case No. 2:19-cv-00138-TL

Mix Sanders Thompson, PLLC
1601 Fifth Ave, Suite 1800
Seattle, WA 98101
Tel: 206-678-1000
Fax: 888-521-5980