The Honorable Tana Lin

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSUR-ANCE COMPANY, a Pennsylvania corporation, as subrogee of DH&G, LLC, | ) ) ) ) Case No. 2:19-cv-00138-TL |
| Plaintiff, | ) ) PLAINTIFF'S MEMORANDUM OF LAW ) OPPOSING DEFENDANT'S MOTIONS IN |
| v. | ) LIMINE ) |
| HEWLETT-PACKARD COMPANY, | ) ) |
| Defendant. | ) |

## INTRODUCTION

Plaintiff Philadelphia Indemnity Insurance Company, as subrogee of DH&G, LLC ("Philadelphia Indemnity") submits this Memorandum of Law in opposition to Defendant Hewlett-Packard Company's Motions in Limine.

## FACTUAL BACKGROUND

Plaintiff assumes that the Court is familiar with the background of this case. Although Defendant's statement of facts omits key context and takes Lynn Yevrovich's speculation as fact, these indiscretions are not pertinent to the instant motions. For clarifications and corrections of the factual background of this case, Plaintiff would direct the Court to Plaintiff's previous recitals of the facts. (See Dkts. #55 and #63.)

/ / /

Page 1 – PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTIONS IN LIMINE

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

**ARGUMENT**

**I.    PLAINTIFF'S DAMAGES ARE LIQUIDATED.**

"Prejudgment interest awards are based on the principle that a defendant 'who retains money which he ought to pay to another should be charged interest upon it.'" *Hansen v. Rothaus*, 107 Wash. 2d 468, 473, 730 P.2d 662, 665 (1986) (quoting *Prier v. Refrigeration Eng'g Co.*, 74 Wash. 2d 25, 34, 442 P.2d 621 (1968)). "The plaintiff should be compensated for the 'use value' of the money representing his damages for the period of time from his loss to the date of judgment. *Id.* (citing *Mall Tool Co. v. Far W. Equip. Co.*, 45 Wash. 2d 158, 273 P.2d 652 (1954)).

"Whether prejudgment interest is awardable depends on whether the claim is a liquidated or readily determinable claim, as opposed to an unliquidated claim." *Hansen*, 107 Wash. 2d at 472. A "liquidated" claim is a claim "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Id.* (quoting *Prier v. Refrigeration Eng'g Co.*, 74 Wash. 2d 25, 32, 442 P.2d 621, 625–26 (1968)). "**A dispute over the claim, in whole or in part, does not change the character of a liquidated claim to unliquidated**." *Id.* (citing *Prier*, at 33, 442 P.2d 621).

The Washington Court of Appeals has explained: "The defendant's claim that he or she is not liable for part or all of the plaintiff's liquidated damages will not preclude a successful plaintiff from receiving prejudgment interest." *Hadley v. Maxwell*, 120 Wash. App. 137, 143–44, 84 P.3d 286, 290 (2004), <u>as amended on denial of reconsideration</u> (Mar. 23, 2004) (citing *Weyerhaeuser*, 142 Wash.2d at 685, 15 P.3d 115; *Prier,* 74 Wash.2d at 33, 442 P.2d 621). Further, "the defendant's belief that he or she never owed the money in the first place has never been an excuse for avoiding interest on a liquidated claim." *Colonial Imports v. Carlton N.W., Inc.,* 83 Wash.App. 229, 247, 921 P.2d 575 (1996) (citing *Prier,* 74 Wash.2d at 34, 442 P.2d 621)).

In this case, Plaintiff's claim is for the damage caused to its property by a defective product manufactured and sold by Defendant. In a property damage case, "where the injury is not

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

permanent and the premises can be restored to their original condition, the usual measure of damage is restoration costs and loss of use." *Pugel v. Monheimer*, 83 Wash. App. 688, 692, 922 P.2d 1377, 1379 (1996). Plaintiff in this case has meticulously documented its expenditures and costs. Plaintiff has invoices of monies paid to restore the property to its former use, as well as detailed calculations of lost rents. *DePhelps v. Safeco Ins. Co. of Am.,* 116 Wash. App. 441, 454, 65 P.3d 1234, 1240 (2003). These amounts can be, and have been, determined "with exactness [and] without reliance on opinion or discretion." *Hansen*, 107 Wash. 2d at 472.

The following excerpt from *Weyerhaeuser Co. v. Commercial Union Ins. Co.* is particularly instructive here:

> Here, the parties disputed the amount of insurance coverage available and the amount of damage sustained. Once liability was established, however, calculating the amount due required no discretion—it equaled the invoices for the cleanup work performed. The questions before the jury were simply ones of liability and did not involve opinion or an exercise of discretion regarding the amount of the award, as would be the case with general damages. Weyerhaeuser factually established its costs through the presentation of invoices. The date those invoices were paid established the proper time interest began to run.

142 Wash. 2d 654, 686, 15 P.3d 115, 133 (2000), as amended (Jan. 16, 2001). Similarly, Plaintiff's damages can be easily calculated from the invoices paid to restore the property to its previous condition and from documents evidencing the lost rental income. No discretion is required, so Plaintiff's damages are liquidated, and it is entitled to prejudgment interest.

### a. Hazardous Material Abatement and Building Code Upgrades.

Defendant seems to argue that only two small portions of Plaintiff's damages are actually unliquidated – the damages related to hazardous material abatement and building code upgrades. For these assertions, Defendant relies on the anticipated testimony of its purported expert, Nash Johnson. The arguments as to these categories of damages fail for two primary reasons.

First, Defendant does not argue that the amounts of these damage categories cannot be determined with exactness; it argues only that it should not be liable for these damages. *Hansen*,

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

107 Wash. 2d at 472. In fact, Defendant even gives an exact total for the damages it claims are disputed – $1,474,342. (Nash Johnson Report, 6.) As was explained above, a dispute over the claim does not change the character of a liquidated claim to unliquidated. *Hansen*, 107 Wash. 2d at 472.

Second, as was argued in Plaintiff's own Motions in Limine, Mr. Johnson's testimony is inadmissible, and Defendant's legal arguments on these damages fail. The hazardous material abatement was caused and necessitated by the fire damage, and "building code upgrades are recoverable as necessary to restore the structure to its former use." *DePhelps v. Safeco Ins. Co. of Am.,* 116 Wash. App. 441, 454, 65 P.3d 1234, 1240 (2003). Plaintiff is entitled to these damages, and they can be determined with exactness without opinion or discretion.

### b.  Conclusion.

Defendant argues that "the claimed damages cannot be determined without opinion or discretion." As established above, this is incorrect. The amounts alleged by Plaintiff are exact and are readily determinable. *Hansen*, 107 Wash. 2d at 472. The damages require only a legal determination by the Court that Defendant is liable. *See id*. ("A dispute over the claim, in whole or in part, does not change the character of a liquidated claim to unliquidated."). Thus, Plaintiff's damages are liquidated, and Plaintiff is entitled to prejudgment interest upon success at trial.

## II.    EVIDENCE OF OTHER HP BATTERY FIRES OR BATTERY RECALLS IS ADMISSIBLE

Defendant asks that evidence of accidents involving other HP computer models be excluded. This request should be denied because the evidence Plaintiff intends to offer involves circumstances that sufficiently similar to the subject incident, will be used to impeach and rebut Defendant's witnesses, and is admissible for its own experts' credibility.

"A motion *in limine* is ordinarily granted only if the evidence at issue is inadmissible on all potential grounds; if not, the evidentiary ruling is better deferred until trial, to allow for questions of foundation, relevancy, and prejudice to be resolved with the appropriate context." *Apodaca*

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

1   *v. Eaton Corp.*, 2:20-CV-01064-TL, 2023 WL 2242146, at *1 (W.D. Wash. Feb. 27, 2023) (citing

2   *United States v. Sims*, 550 F. Supp. 3d 907, 912 (D. Nev. 2021).

3              **a.  The Components Involved Are Substantially Similar.**

4          Defendant argues that evidence of accidents involving other HP laptop models is irrelevant

5   because they are "dissimilar accidents." *Cooper v. Firestone Tire & Rubber Co*., 945 F.2d 1103,

6   1105 (9th Cir. 1991). Plaintiff's allegations against HP, however, do not stem from the particular

7   model of computer purchased by Mark Davis. Instead, they stem from the lithium-ion battery pack

8   within the computer.

9          Plaintiff's battery expert, Michael Eskra, will testify that the battery failure was not caused

10  by any defect within the specific laptop model's hardware or software, but by the manufacturing

11  of the battery pack component. These lithium-ion batteries are interchangeable between many HP

12  laptop products, so fires and recalls involving other HP models involve substantially the same

13  circumstances as the fire in this case. Any small differences between the subject battery pack and

14  those involved in other HP incidents should go to the weight of the evidence, and not to the ad-

15  missibility. *See Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 400–01 (5th Cir. 1965)

16  ("The differences between the circumstances of the two accidents could have been developed to

17  go to the weight to be given such evidence. It cannot be held inadmissible under either the federal

18  or the state rule.")

19         Plaintiff has obtained information regarding failures – and subsequent voluntary recalls

20  initiated by HP – of batteries manufactured at or near the time Mr. Davis purchased his computer

21  in 2015. (*See* Exhibit 1.) Plaintiff's experts will testify that the three-cell lithium-ion batteries in

22  these recalls are the same, or substantially similar, to those in Mr. Davis's computer. Further, De-

23  fendant has not affirmatively established that these batteries are not substantially similar. Accord-

24  ingly, precluding this evidence at this stage would be premature and prejudicial to Plaintiff.

25  / / /

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON 97204
TELEPHONE (503) 224-2165

An instructive case is *Beaty v. Ford Motor Co.*, which involved defective panoramic sun-roofs ("PSRs") in Ford automobiles. 854 Fed. Appx. 845, 848 (9th Cir. 2021). The Ninth Circuit Court of Appeals affirmed the district court's admission of evidence of other Ford models' PSR defects as substantially similar to the plaintiff's incident because there was evidence that the specific components – the PSRs – were "built the same way by the same two manufacturers." *Id*. The court explained that, when using the "substantial similarity" inquiry, "the relevant similarities are properly defined in terms of the defect at issue." *Id*. Because the defect involved the PSRs, other models with similar PSR components were relevant and admissible. *Id*.

Analogously, whether another HP battery accident is relevant and admissible does not depend on the specific model number of computer; it depends on whether the fire involved a substantially similar lithium-ion battery pack. Therefore, Defendant's request should be denied. Evidence of accidents and recalls involving lithium-ion batteries in HP laptop computers is directly relevant to the issue of HP's culpability.

### b. Even Dissimilar Accidents Are Admissible as Impeachment and Rebuttal Evidence

Evidence of other failures and recalls involving lithium-ion battery packs manufactured and sold by HP are sufficiently similar to be admissible as direct evidence of a defective product. Even if the Court disagrees with that position, though, evidence of other accidents is still admissible to impeach and rebut Defendant's witnesses. The following excerpt from *Cooper* is clear on this issue:

> We agree with the Eighth Circuit that evidence of dissimilar accidents may be admitted when relevant to the witness's credibility… When an expert testifies that a product is generally safe, as appellants' experts did, the witness's credibility can be undermined by showing the witness had knowledge of prior accidents caused by the product. [Citation omitted.] The evidence of other accidents, whether similar or not, tends to show the witness's claims of product safety are overstated and the witness therefore may not be reliable.

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

1  *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991). Based on the expert

2  report of Quinn Horn, it is almost certain that Defendant will offer testimony that its products are

3  safe. (*See*, *e.g.*, Horn Report at 13 ("HP vets its cell manufacturers to ensure that the quality of the

4  cells that are installed in its packs is consistently high…These documents further confirm that HP

5  packs are safe when utilized as designed.") As explained in *Cooper*, Plaintiff is entitled to rebut

6  this testimony with evidence of other HP products' batteries causing fires and/or being recalled.

7  945 F.2d at 1105.

8       It is also likely that Defendant will attempt to offer alternative theories for the origin of the

9  fire. (*See*, *e.g.*, Colwell Report at 40 ("...there is compelling circumstantial evidence that the sub-

10  ject fire was deliberately set by Mr. Davis.") Evidence of dissimilar accidents is also admissible in

11  this situation. The below excerpt is directly analogous:

12       Benson did not introduce the evidence of black particles in other buildings as "di-
        rect proof" that Victaulic's valves and couplings had degraded and leached into
13      Benson's water supply. Rather, Benson put on this evidence to rebut Victaulic's
        theory that the black particles came from degrading elastomers in Portland's mu-
14      nicipal water pipes rather than from Victaulic's products. The evidence was rele-
        vant to, and probative of, whether the black particles came from an external source
15      rather than the valves and couplings in Benson Tower. Victaulic was aware that it
        could "open the door" to such evidence by suggesting that the black particles came
16      from a source other than its products, and it did so during cross-examination of one
        of Benson's experts. Because the evidence was not used as direct proof of Victau-
17      lic's negligence or a defect in its products, its admission was not error.

18  *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 702 Fed. Appx. 537, 541 (9th Cir.

19  2017). If Defendant opens the door regarding other potential causes of the fire, Plaintiff is entitled

20  to rebut this testimony with evidence of other HP battery failures. *Id.*

21       The following quote from *Marco Crane & Rigging Co. v. Greenfield Productions LLC*,

22  succinctly summarizes the law on this issue: "Defendants will bring witnesses to defend their de-

23  sign in some manner. These defenses will include claims either that the design is safe or that the

24  accident was caused by another source. Either assertion may be rebutted with other dissimilar

25  incidents." CV-17-01836-PHX-GMS, 2020 WL 13454128, at *1 (D. Ariz. Sept. 25, 2020).

MacMillan, Scholz & Marks, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

1    This impeachment/rebuttal evidence is allowable even if it has some prejudicial effect on

2    Defendant. From *Cooper*: "Although the other-accident evidence may have had some prejudicial

3    effect, it was also highly probative of the credibility of the assertion of appellants' experts that the

4    RH5 degree was generally safe. We cannot say its admission was an abuse of discretion." 945 F.2d

5    at 1105.

6    Accordingly, even if the Court disallows evidence of other HP battery incidents as direct

7    proof of fault, the evidence is admissible to impeach and rebut Defendant's witnesses.

8        **c.  Evidence of Dissimilar Incidents is Admissible to Establish Plaintiff's Experts' Credentials.**

9

10   Again, Plaintiff maintains that other HP battery incidents are sufficiently similar and are

11   admissible for all purposes. Alternatively, Plaintiff is entitled to offer evidence of other battery

12   fires to the extent that it is establishing the credentials of its expert witnesses. The District Court

13   of Idaho explains:

14       Here, Plaintiffs are correct that Mr. Tompkins' experience in working on motorhomes with issues similar to the ones alleged in this case is pertinent to, and may
15       be used in, establishing Mr. Tompkins' credentials as an expert.

16   *Miller v. Four Winds Int'l Corp.*, 2:10-CV-00254-CWD, 2012 WL 465445, at *2 (D. Idaho

17   Feb. 13, 2012). Therefore, Plaintiff's expert witnesses must be allowed to testify regarding other

18   battery fires they have investigated in order to establish their credibility before the jury.

19       **d.  Conclusion.**

20   Evidence of other incidents involving HP laptop batteries is admissible for several pur-

21   poses, so Defendant's Motion should be denied. Further, if the Court is to admit this evidence on

22   *any potential grounds*, this Motion "is better deferred until trial, to allow for questions of founda-

23   tion, relevancy, and prejudice to be resolved with the appropriate context." *Apodaca*, 2023 WL

24   2242146, at *1.

25   / / /

MacMillan, Scholz & Marks, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

### III.   TESTIMONY REGARDING KEN RICE'S CURRENT ROLE AS COUNTY FIRE MARSHAL IS RELEVANT AND NON-PREJUDICIAL AND SHOULD BE ADMITTED.

Defendant seeks to prevent Plaintiff's expert witness, Ken Rice, from testifying regarding his current role as a county fire marshal. Rice's role as a fire marshal is both relevant and non-prejudicial and he should not be prevented from testifying about that role.

In order to weigh and evaluate an expert's opinions, jurors must understand the expert's roles, qualifications, and background. *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("When an expert meets the threshold established by Rule 702 as explained in *Daubert,* the expert may testify and the jury decides how much weight to give that testimony."). To accomplish this weighing of credibility, it is routine and relevant for experts to testify regarding their previous and current roles. Rice's current role is Pierce County Fire Marshal and that information is relevant to the jury's evaluation. Additionally, testimony regarding Rice's current role would not be prejudicial or confusing to the jury. Plaintiff has no intention of insinu-ating or suggesting to a jury that Rice acted in his capacity as a fire marshal when developing his opinions in this matter. To the extent Defendant is concerned about possible prejudice and jury confusion on Rice's current role, that is an issue better addressed in cross examination where De-fendant has the opportunity to question Rice in order clarify this distinction as it sees fit. Defendant also seeks to prevent Rice from wearing his uniform, or other identifier of his public office. Plain-tiff does not intend to mislead the jury regarding Rice's role as an expert. Plaintiff will inform Rice that he should not wear his uniform, badge, or other identifier of his public office while testifying.

Testimony regarding Rice's current role as a County Fire Marshal is relevant to his credi-bility and does not create a danger of unfair prejudice. Even if there were a risk of prejudice, any prejudice could be easily remedied through cross examination rather than a blanket prohibition of testimony. Rice should be permitted to testify regarding his current role.

/ / /

MacMILLAN, SCHOLZ & MARKS, LLC
ATTORNEYS AT LAW
900 SW FIFTH AVENUE, SUITE 1800
PORTLAND, OREGON  97204
TELEPHONE (503) 224-2165

1

## <u>CONCLUSION</u>

2          For all the foregoing reasons, Plaintiff requests that the Court deny Defendant's Motions

3  in their entirety.

4  <u>DATED: September 25, 2023</u>.                    MacMILLAN, SCHOLZ, & MARKS, LLC

5

                                        By:   <u>*/s/ John R. MacMillan*</u>
6                                             John R. MacMillan, WSB #27912
                                             MacMillan Scholz & Marks
7                                             900 SW Fifth Ave., #1800
                                             Portland, OR 97204
8                                             T: (503) 224-2165
                                             F: (503) 224-0348
9                                             E: jmacmillan@msmlegal.com
                                             *Of Attorneys for Plaintiff*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page

10 – PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTIONS IN LIMINE

1

## **CERTIFICATE OF SERVICE**

2           I, John R. MacMillan, certify under penalty of perjury under the laws of the United States

3   that, on the date set forth below, I caused the foregoing document to be served by the method(s)

4   indicated below on the parties listed below:

5       Christopher G. Betke              ☐ Via Hand Delivery
        Coughlin ◦ Betke LLP              ☐ Via US Mail, Postage Prepaid, First Class
6       175 Federal Street                ☐ Via Facsimile
        Boston, MA 02110                  ☒ Via CM/ECF
7       *Of Attorneys for Defendant*      ☒ Via E-Mail:   cbetke@coughlinbetke.com

8       Kenneth M. Roessler               ☐ Via Hand Delivery
        Mix Sanders Thompson, PLLC        ☐ Via US Mail, Postage Prepaid, First Class
9       1420 Fifth Avenue, Suite 2200     ☐ Via Facsimile
        Seattle, WA  98101                ☒ Via CM/ECF
10      *Of Attorneys for Defendant*      ☒ Via E-Mail:   ken@mixsanders.com

11  DATED:  September 25, 2023.

12                                        */s/ John R. MacMillan*
                                          John R. MacMillan, WSBA #27912
13                                        Of Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

Page    1 – CERTIFICATE OF SERVICE