UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>        Defendant. | CASE NO. 2:19-cv-00138-TL<br><br>ORDER ON MOTIONS |

This matter is before the Court on Plaintiff Philadelphia Indemnity Insurance Company's Motion to Exclude Defendant's Expert Nash Johnson (Dkt. No. 63 at 13–15), Defendant Hewlett-Packard Company's Motion to Preclude Prejudgment Interest (Dkt. No. 61 at 3–4), Defendant's Motion to Strike Witnesses Steve DeKoekkoek, Belfor, and JS Held from Pretrial Order and to Exclude Their Testimony (Dkt. No. 92), and Defendant's Motion for Reconsideration of Court Ruling on Plaintiff's Motion *in Limine* Excluding Lynn Yevrovich Evidence (Dkt. No. 99). Having reviewed the Parties' briefing and the relevant record, the Court decides the motions as follows.

## I. BACKGROUND

Having recently summarized the facts and history of this case, the Court assumes familiarity with the background of this case and only sets out recent developments below. *See* Dkt. No. 59.

Jury trial in this matter is set to begin on October 16, 2023. Dkt. No. 41. At a pretrial conference held on October 10, 2023, the Court made oral rulings on a variety of motions *in limine* filed by the Parties (Dkt. Nos. 61, 63), and a pretrial order was issued thereafter in which those rulings are summarized. Dkt. Nos. 90, 95.

The Court granted Plaintiff's motion to exclude the statements of Ms. Lynn Yevrovich (Dkt. No. 63 at 4–12) but permitted Defendant to move for reconsideration of its ruling as to Ms. Yevrovich's video-recorded interview "should it find authority that a videorecorded interview not taken under oath qualifies for admission" under the residual hearsay exception. Dkt. No. 95 at 8. The Court reserved ruling on Plaintiff's motion to exclude the expert testimony of Defendant's expert Nash Johnson and directed Defendant to file a supplemental declaration with Mr. Johnson's qualifications and support for his opinions. Dkt. No. 95 at 9. The Court also reserved ruling on Defendant's motion to preclude prejudgment interest, pending the outcome of the motion on Mr. Johnson's testimony. *Id.* Finally, the Court directed Plaintiff to respond to Defendant's motion to strike Plaintiff's damages witnesses, which the Court permitted to testify as lay witnesses. *Id.*

## II. LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance [of trial] testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009); *see also* Fed. R. Evid. 401, 403. While the Federal Rules of Evidence ("FRE") do not explicitly permit motions *in limine*, they are a part of a "district court's inherent authority to manage the

course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). A motion *in limine* should not be used to resolve factual disputes, weigh evidence, or as a substitute for a motion for summary judgment. *See, e.g.*, *Coppi v. City of Dana Point*, No. C11-1813, 2014 WL 12589639, at *3 (C.D. Cal. Feb. 24, 2014). A motion *in limine* is ordinarily granted only if the evidence at issue is inadmissible on all potential grounds; if not, the evidentiary ruling is better deferred until trial, to allow for questions of foundation, relevancy, and prejudice to be resolved with the appropriate context. *See United States v. Sims*, 550 F. Supp. 3d 907, 912 (D. Nev. 2021). A motion *in limine* should not be used to resolve factual disputes or weigh evidence. *Id.*; *Liu v. State Farm Mut. Auto. Ins. Co.*, No. C18-1862, 2021 WL 717540, at *1 (W.D. Wash. Feb. 24, 2021). A court's ruling on a pre-trial motion *in limine* is preliminary and can be revisited at trial based on the facts and evidence as they are actually presented. *See, e.g.*, *Luce*, 469 U.S. at 41 ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Further, "[m]otions for reconsideration are disfavored." LCR 7(h)(1). Such motions must be denied absent a showing of "manifest error in the prior ruling or . . . new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." *Id.* Motions for reconsideration should be granted only in "highly unusual circumstances." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). "A motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Id.* (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

III.  DISCUSSION

A.  **Plaintiff's Motion to Exclude Defendant's Expert**

Among its motions *in limine*, Plaintiff seeks to exclude the expert testimony of Nash Johnson, arguing that Mr. Johnson does not have a basis for his opinions or will make impermissible legal conclusions. *See* Dkt. No. 63 at 13–15. The Court ordered Defendant to file a supplement declaration from Mr. Johnson with his qualifications and support for his opinions. Dkt. No. 95 at 9. After the pretrial conference, Defendant filed a supplemental declaration from Mr. Johnson detailing his qualifications and the basis for his opinions. *See* Dkt. No. 100 (declaration); 100-1 (curriculum vitae). Mr. Johnson's qualifications include "over 29 years of work experience in commercial construction management in the Pacific Northwest." *Id.* at 1; *see also id.* at 1–2 (detailing experience). His opinions are based on review of discovery materials and document productions, and they are supported by his education and experience. *Id.* at 3; *see also id.* at 4–21 (expert's review, discussion, comments, and opinions). Mr. Nash has now supplied sufficient support for his opinions.

However, Mr. Johnson included two new categories of damages that were not in his original report: (1) a fire alarm system; and (2) Washington State Sales Tax. *See* Dkt. No. 100 at 20–21. These two categories of damages were not timely disclosed and thus will not be added on the eve of trial. Therefore, the Court finds that Mr. Johnson is permitted to testify as an expert except that he may not testify about the cost of a fire alarm system or state taxes. *See* Fed. R. Evid. 702. Plaintiff's motion is DENIED.

B.  **Defendant's Motion to Preclude Prejudgment Interest**

For the reasons stated at the pretrial conference, and as the Court is allowing the testimony of Mr. Johnson, Defendant's motion is GRANTED.

**C.       Defendant's Motion to Strike and Exclude Plaintiff's Witnesses**

Defendant moves to strike from the pretrial order and exclude the testimony of Plaintiff's damages witnesses: Steve DeKoekkoek, Belfor USA Group, Inc., and JS Held Construction Consulting.[1] *See* Dkt. No. 92. Plaintiff previously raised this issue in its trial brief, noting that Defendant "seeks to exclude this testimony by claiming that it is expert testimony." Dkt. No. 74 at 6. At the pretrial conference, the Court heard the Parties on the issue and made an oral ruling that Plaintiff's witnesses would be excluded as experts but permitted to testify as lay witnesses. Because Defendant's motion was filed after the Court's ruling at the pretrial conference, the Court considers it to be a motion for reconsideration.

Defendant fails to demonstrate manifest error in the Court's prior ruling or to bring forth new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence. *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 880. The crux of Defendant's argument, renewed in the instant motion, is that the testimony of Plaintiff's damages witnesses is "expert in nature." *See* Dkt. No. 92 at 5–8. The Court respectfully disagrees. As Defendant acknowledges, Plaintiff identified these witnesses in their initial disclosures and stated that they had information related to the repairs and repair costs sustained by Plaintiff as part of the insurance claim. *See* Dkt. No. 92 at 2–4. Defendants could have deposed these individuals to determine the specifics of their knowledge about Plaintiff's damages but chose not to do so. Dkt. No. 98 at 2. This knowledge, as Plaintiff explains, "includes the costs to repair the building, which includes the costs incurred to make the property complaint with current building codes." Dkt. No. 98 at 2. The witnesses will only testify to "actual costs of repair" and "amounts lost in rent" which "do not require technical or scientific expertise." *Id.* at 3. Defendant will be able to

---

[1] Defendant also moves for permission to file a reply. Dkt. Nos. 101, 101-1 (reply). Defendant's request is GRANTED.

ORDER ON MOTIONS - 5

use the information it has from its expert, Mr. Johnson, to challenge Plaintiff's witnesses on what costs are reasonably necessary during Plaintiff's case-in-chief and during its own case, should it choose to do so. Defendant's motion is DENIED.[2]

D.     **Defendant's Motion to Reconsider Court's Ruling on Yevrovich Evidence**

Finally, Defendant moves for reconsideration of the Court's ruling on evidence of statements made by Ms. Yevrovich. *See* Dkt. No. 99. Specifically, Defendants seeks the admission of two documents: (1) a video-recorded statement made to police investigators (Dkt. No. 64-1 (transcript)); and (2) a sworn written statement (Dkt. No. 64-5). At the pretrial conference, the Court granted Plaintiff's motion *in limine* to exclude this evidence as inadmissible hearsay. *See* Dkt. No. 95 at 8.

The crux of Defendant's argument is that both documents should be admitted under the so-called "residual exception" to hearsay. *See* Fed. R. Evid. 807. That rule permits the admission of a statement that meets the following criteria:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

*Id.* 807(a).[3] However, Defendant fails to demonstrate manifest error in the Court's prior ruling or to bring forth new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence. *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 880.

---

[2] For these same reasons, the Court denied Plaintiff's motion to exclude Defendant's witness, Mr. Lee Atkinson, as an expert witness. *See* Dkt. No. 95 at 10.

[3] The proponent of the evidence must also provide reasonable notice of the intent to introduce such evidence to the adverse party. Fed. R. Evid. 807(b). This does not appear to be an issue in this case.

As to the video-recorded statement, the Court does not, as Defendant asserts, "impose[ ] a standard . . . that simply does not exist under Rule 807," namely, a "requirement" that a statement be "made under oath" before admission. Dkt. No. 99 at 5. Instead, the Court considers "the totality of the circumstances" to assess the trustworthiness of the statement. Fed. R. Evid. 807(a)(1). In doing so, the Court notes that some of the circumstances do cut in favor of admission. As Defendant points out, Ms. Yevrovich provided "critically important" eyewitness testimony, which was video-recorded (Dkt. No. 99 at 4); she appeared to understand the investigators' questions and recalled details of the fire and the apartment (*id.* at 5); and she gave her statements voluntarily (*id.* at 6).

However, the video statement should be excluded because the remaining circumstances weigh heavily against its trustworthiness. As Defendant concedes (*id.* at 6), Ms. Yevrovich did not make this statement under oath, a factor considered important in *United States v. Sanchez-Lima*, 161 F.3d 545, 547–48 (9th Cir. 1998), and *United States v. Leal-Del Carmen*, 697 F3d 964, 974 (9th Cir. 2012). Although it is a misdemeanor under Washington law to make a false or misleading statement to police investigators (*see* RCW 9A.76.175), this statutory backdrop is not as strong a guarantor of trustworthiness as taking an oath and facing threat of perjury, nor does Defendant cite any court that has credited such an argument.

Even more significantly, Ms. Yevrovich had a strong motive to lie: she believed herself to be a possible target of the investigation. This belief is demonstrated by her repeated (and unprompted) protestations of innocence. *See, e.g., id.* at 5 (4:18–19) ("I'm not guilty, so I'm happy to tell you what happened."); *id.* at 25 (24:4–5) ("And I felt really bad, but I wasn't the one that did it, you know."); *id.* at 38 (37:7–9) ("You know, I don't know what happened with him – with that, because I didn't set the fire. I only found it."); *id.* at 79 (78:10–13) ("I lost at least as much as [my neighbor] did, and just because it happened in my apartment didn't –

doesn't mean I set it or I wanted it set. I didn't want it set."); *id.* at 89 (88:23–25) ("I said, I have to make a statement to somebody, and so I did that very night. And obviously I wouldn't have done that if I were guilty."). Her belief is also demonstrated by her repeated (and unprompted) efforts to discredit her roommate, Mr. Mike Davis, to whom she ascribed blame for the fire. *See, e.g., id.* at 47 (46:4–8) ("But, you know, he's a liar. I don't know how it started, because he lies all the time. . . . A fire, huh? It destroyed all the proof that you ever had a degree or anything, you know, how convenient.").

For this reason alone, this case is easily distinguishable from *Harrington v. City of Redwood City*, 7 F. App'x 740 (9th Cir. 2001),[4] where the Ninth Circuit found it was not an abuse of discretion for the district court to admit a taped police interview under the residual exception. In *Harrington*, there was "a substantial guarantee of trustworthiness because [the declarant] was a law enforcement officer himself, and was talking on a tape recorder to the inspectors from the district attorney's office."[5] *Id.* at 743. This case is also distinguishable from *Thompson v. Prop. & Cas. Ins. Co.*, where "the record contain[ed] absolutely no evidence" that the witness—the owner of a jewelry shop interviewed as part of an investigation into a former customer's insurance claim—had a motive to lie. No. C13-2437, 2015 WL 9009964, at *5 (D. Ariz. Dec. 15, 2015).

The written statement suffers from some of the same problems and then some of its own. Unlike the video-recorded statement or the statement in *Sanchez-Lima*, the written statement cannot be viewed by the jury and thus does not permit the jurors an opportunity to view Ms.

---

[4] The Court also notes that *Harrington* is not binding precedent, nor may it be cited here because it was issued prior to January 1, 2007. *See* 9th Cir. R. 36-3(a), (c).

[5] Defendant asserts that the interview in *Harrington* was not given under oath (Dkt. No. 99 at 4), but the Court does not see that fact described in the case. Even giving Defendant the benefit of the doubt, a substantial guarantee of the trustworthiness of the statement in *Harrington* was that the declarant was a police officer. 7 F. App'x at 743.

Yevrovich's demeanor. *Sanchez-Lima*, 161 F.3d at 547. Nor will Defendant be able to authenticate the document, as it is not calling the officer who took the statement nor any other officer who could lay a foundation for its admission. *See* Fed. R. Evid. 901.[6] The only evidence corroborating Ms. Yevrovich's written *or* video-recorded statements are her *own prior statements*.[7] But even then, the written statement contradicts the video-recorded statement on a critical issue: Ms. Yevrovich wrote that Mr. Davis "smoked in his room" and she "smelled smoke" before she "opened the door to his room" and saw "[t]he mattress was on fire" (Dkt. No. 64-5 at 2), she told police investigators that the smoke "didn't smell like tobacco" (Dkt. No. 64-1 at 51 (50:18)).

Finally, even if these statements were admissible under the residual exception, the core statements regarding her opinion as to the cause of the fire would be inadmissible speculation. As Ms. Yevrovich told investigators, she was in a separate room from Mr. Davis for about an hour and a half preceding the fire. *See* Dkt. No. 64-1 at 15–16 (14:3–7, 14:14–15:2). During that time, the door to Mr. Davis's bedroom was closed, and Mr. Davis did not communicate with Ms. Yevrovich in any way. *See id.* at 6 (5:16–18), 80 (79:18–23). Therefore, she did not have any personal knowledge as to the cause of the fire and any statements to that end would be speculation. *See* Fed. R. Evid. 602; Dkt. No. 64-1 at 66 (65:12–13) ("I don't know what happened, because I wasn't there when it started."). Defendant's motion is DENIED.

---

[6] The date of the statement alone is insufficient. Defendant asserts a number of facts regarding the circumstances of the statement (Dkt. No. 99 at 7-8), but counsel's statements are not evidence. Notably, Defendant did not include on its witness list any officer that could establish the time the statement was written or testify regarding Ms. Yevrovich's demeanor at the time she provided the statement to the extent Defendant suggests it might qualify as an excited utterance or present sense impression. *See* Dkt. No. 95 at 4–5 and 6–7.

[7] At the pretrial conference, Defendant expressed a concern that it would be forced to put on a sanitized case. However, the 911 call will provide context. Further, the Court has ruled that "[t]o the extent that any experts considered any of Ms. Yevrovich's statements in forming their opinions, the experts may be questioned regarding those statements because in that context, the statements will not be offered in evidence to prove the truth of the matter asserted in the statements." Dkt. No. 95 at 8.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) Plaintiff's Motion *in Limine* to Exclude Defendant's Expert Nash Johnson (Dkt. No. 63 at 13–15) is DENIED.

(2) Defendant's Motion *in Limine* to Preclude Prejudgment Interest (Dkt. No. 61 at 3–4) is GRANTED.

(3) Defendant's Motion to Strike Witnesses Steve DeKoekkeok, Belfor, and JS Held from Pretrial Order and to Exclude Their Testimony (Dkt. No. 92) is DENIED.

(4) Defendant's Motion for Reconsideration of Court Ruling on Plaintiff's Motion in Limine Excluding Lynn Yevrovich Evidence (Dkt. No. 99) is DENIED.

Dated this 13th day of October 2023.

Tana Lin
United States District Judge